167 P.3d 1112 (2007)
Carey D. ERWIN, a single person, and Healthcare Properties, Inc., a Washington corporation, Respondents,
v.
COTTER HEALTH CENTERS, a foreign corporation, and James F. Cotter, a single person, Petitioners.
No. 78928-2.
Supreme Court of Washington, En Banc.
Argued May 22, 2007.
Decided September 20, 2007.
*1114 Charles Kenneth Wiggins, Wiggins & Masters PLLC, Bainbridge Island, WA, for Petitioner.
James Stephan Berg, Larson Berg & Perkins, Yakima, WA, for Respondent.
FAIRHURST, J.
¶ 1 Petitioners James F. Cotter and Cotter Health Centers challenge a Court of Appeals decision affirming the award to respondents Carey D. Erwin and Healthcare Properties, Inc., of fees arising from the leasing of several of Cotter's senior health care (SHC) facilities. Cotter argues that Erwin provided real estate broker services to Cotter; that the parties' contractual choice of Washington law is ineffective and California, not Washington law, should govern their dispute; and that under California law Erwin is prohibited from claiming the leasing fees because Erwin was not licensed in California as a real estate broker.[1] We agree that Erwin acted as a real estate broker. However, we hold that the parties' contractual choice of Washington law is effective, and that therefore Washington, not California, law governs the agreement. Applying Washington law, we hold that Erwin can maintain a claim for fees arising from the leasing of Cotter's California SHC facilities.

I. FACTUAL AND PROCEDURAL HISTORY
A. Background
¶ 2 Erwin, a Washington resident at all times material hereto, is the sole owner and operator of Healthcare Properties, Inc., a Washington corporation since at least 1996. Erwin has been a licensed Washington real estate broker since 1992.[2] Since 1987, Erwin has worked exclusively in the area of SHC facilities.
¶ 3 Cotter, a Texas resident at all times material hereto, is the sole owner and operator of Cotter Health Centers, a California corporation. Cotter for many years has owned SHC facilities and other commercial properties in several states. All of Cotter's Texas and California SHC facilities discussed herein were, regardless of their corporate forms, in fact owned by Cotter and under his complete control.[3] Cotter leased these SHC facilities to independent operators.
*1115 ¶ 4 Cotter leased three of his Texas SHC facilities to Camlu Care Centers, a Texas corporation, for its operation. In 1997, Camlu contracted with Erwin "to help it divest its leasehold interest" in those SHC facilities. Clerk's Papers (CP) at 30, Findings of Fact (FOF) 10. In early 1998, Erwin found a potential buyer, the Ensign Group, for Camlu's leases.
¶ 5 The Ensign Group, a California entity, was very interested in taking over Camlu's leases, but only if lease terms longer than the three years remaining on those leases could be negotiated. Extension and transfer of Camlu's leases required Cotter's involvement, which led to Erwin meeting Cotter later in 1998. Erwin also met Cotter's employee, William Sleeth, who performed property management activities for all of Cotter's SHC facilities.
B. Cotter and Erwin entered into a consulting agreement
¶ 6 During 1997 and 1998, many of Cotter's SHC facilities in Texas and California "were experiencing operational problems" due to "inefficient and irresponsible operators." CP at 31, FOF 18. Cotter "turned to" Erwin, "among others, for assistance" with these problems. Id. On February 9, 1999, Erwin and Cotter "signed a document entitled Consultant Agreement" (hereinafter referred to as Agreement) at Cotter's home in California.[4] CP at 31, FOF 19. The Agreement, drafted by Erwin, was consistent with other agreements he had used.
¶ 7 In the Agreement, Cotter granted Erwin a nine month "exclusive engagement to represent and right to sell or lease" designated Cotter SHC facilities. Ex. 8, ¶ 4. Cotter agreed to pay Erwin a "fee" of 14 percent of the first year's annual lease payment for any new operational lease on a designated SHC facility. Ex. 8, ¶¶ 3, 4; see also CP at 33, FOF 32. The Agreement "automatically extended to cover a deferred closing of any business opportunity or Buyer presented" to Cotter during its original nine month term. Ex. 8, ¶ 3. In the event that Cotter canceled the Agreement, Erwin was entitled to an entire fee for any lease of a designated facility made to a "registered buyer" within 36 months following the cancellation.[5] Ex. 8, ¶ 21.
¶ 8 The Agreement expressly stated that it applied to properties identified in "Addendum `A,'" Exhibit 8, ¶ 3, and additionally "contemplated that properties could be added." CP at 33, FOF 30; see also Ex. 8, ¶ 18. When Cotter and Erwin signed the Agreement, Addendum A was "not filled in as to any specific properties." CP at 31, FOF 21. However, they and Sleeth, "prior to, during, and immediately after the meeting of February 9, 1999," discussed "the properties which Cotter was interested in working on, which included facilities in Texas, California, Oklahoma, and possibly others." CP at 31, FOF 21. Shortly thereafter, Addendum A was completed, listing several Texas SHC facilities.[6] CP at 32, FOF 22. Cotter "later gave the signal," through Sleeth, that Erwin should "move ahead with work on" the four California SHC facilities as well. CP at 33, FOF 31.
*1116 C. The fee dispute
¶ 9 After the Agreement was signed, Cotter told Erwin to "deal primarily with" Sleeth "regarding the status of efforts to achieve transfers" of Cotter's interests. CP at 33, FOF 28. Between February 1999, and February 2000, there was "considerable communication" between Erwin and Sleeth and Erwin and the Ensign Group regarding both the Texas and the California SHC facilities.[7] CP at 33, FOF 29. Erwin also arranged and attended meetings of Cotter, Sleeth, and the Ensign Group at Cotter's California home during July 1999, at which the Texas and California SHC facilities were discussed. CP at 33, FOF 33.
¶ 10 Prior to the November 1999 expiration of the Agreement's original nine month term, Cotter and the Ensign Group entered business relationships with respect to two of Cotter's Texas SHC facilities and the four California SHC facilities. On August 18, 1999, Cotter and the Ensign Group executed leases on two Texas SHC facilities. Two days later, Cotter's attorney sent the Ensign Group proposed leases for the four California SHC facilities. The California leases "would have been executed on the terms set forth" but for Cotter's inability to deliver the SHC facilities to the Ensign Group "due to certain contingencies, all of which were eventually resolved by Cotter."[8] CP at 33, FOF 41.
¶ 11 On March 6, 2000, Cotter's attorney sent Erwin a letter terminating "any agreements or other arrangements" between Cotter and Erwin "as to marketing of properties owned by" Cotter. CP at 35, FOF 42. The attorney also sent a letter to the Ensign Group withdrawing the proposed California leases. Over the course of the next year, Cotter worked to make the four California SHC facilities available for transfer, and simultaneously negotiated with the Ensign Group and other parties regarding leasing those facilities. In February 2001, less than 36 months after the cancellation of the Agreement, Cotter and the Ensign Group executed lease agreements for the four California SHC facilities.
¶ 12 Erwin demanded fees under the Agreement for his services in connection with the Cotter-Ensign Group transactions on the two Texas SHC facilities and the four California SHC facilities. Cotter denied that any fees were owed.
D. Procedural history
¶ 13 In July 2002, Erwin filed suit in Yakima County Superior Court seeking to collect fees from Cotter for the two Texas leases and the four California leases. Subsequently, Cotter filed actions against Erwin in Texas and California seeking to block Erwin's litigation in Washington. The Texas court, without explanation, denied Erwin's motion to stay its proceedings. The California court recognized jurisdiction in Washington pursuant to the Agreement and granted Erwin's motion to stay its proceedings until the Washington litigation was completed.
¶ 14 Following a four day bench trial, the trial court found in favor of Erwin. The court concluded that the Agreement's forum selection clause, choosing the jurisdiction of Washington, and choice-of-law provision, choosing Washington law, were effective. CP at 37-38, Conclusions of Law (COL) 2-4, 9, 10, 13, 14. Applying Washington law, the court concluded that, under the terms of the Agreement, Erwin was entitled to "an entire fee" for the Cotter-Ensign Group leases on the two Texas[9] and the four California SHC facilities, plus accrued interest thereon. CP at 40, COL 27-30. The court also awarded Erwin "all attorneys' fees and collection costs" as the prevailing party. CP at 40-41, COL 31-33. The court entered judgment for *1117 Erwin in the amount of $287,811.44 (as of Dec. 3, 2004).
¶ 15 On appeal, the Court of Appeals affirmed the trial court and awarded Erwin costs and fees on appeal. Erwin v. Cotter Health Ctrs., Inc., 133 Wash.App. 143, 155, ¶ 35, 135 P.3d 547 (2006). We granted review. Erwin v. Cotter Health Ctrs., Inc., 159 Wash.2d 1011, 154 P.3d 919 (2007).

II. ISSUES
A. Did Erwin act as a real estate broker in providing services to Cotter under the Agreement?
B. Is the parties' contractual choice of Washington law effective?
C. Under the applicable law, can Erwin, a Washington-licensed real estate broker, maintain a claim for fees arising from the leasing of Cotter's California SHC facilities?

III. ANALYSIS
¶ 16 Cotter argues that Erwin cannot recover a fee for his services in connection with the Cotter-Ensign Group leases because, in providing those services, Erwin acted as a real estate broker in California without the requisite California broker's license in contravention of California law. Erwin argues first that he provided services as a consultant, not as a real estate broker. In the alternative, Erwin argues that Washington law governs this dispute by virtue of the parties' contractual choice of law to that effect and, as a Washington-licensed real estate broker, he is entitled to maintain a claim for his fees.
¶ 17 To resolve this dispute, we address three issues: (1) whether Erwin acted as a real estate broker in providing services to Cotter under the Agreement, (2) whether the parties' contractual choice of Washington law is effective, and (3) whether, under the applicable law, Erwin, a Washington-licensed real estate broker, can maintain a claim for fees arising from the leasing of Cotter's California SHC facilities. The first issue is a threshold issue. If Erwin did not act as a real estate broker, then an essential component of Cotter's argumentErwin's lack of a California broker's licenseis immaterial.[10] However, we hold that Erwin did act as a real estate broker. Thus, we must determine whether Erwin lawfully can maintain a claim for his services by addressing issues two and three. On the second issue, the conflict of laws dispute, we hold that the parties' contractual choice of Washington law is effective. Finally, applying Washington law to the facts presented here, we hold that Erwin can maintain a claim for the leasing fees.
A. Erwin acted as a real estate broker in providing services to Cotter under the Agreement
¶ 18 The threshold issue in this case is whether Erwin acted as a real estate broker in providing the services for which he claims a fee under the Agreement. Determining whether a person acted as a real estate broker through a particular course of conduct is a mixed question of law and fact, in that it requires applying legal precepts (the definition of "real estate broker") to factual circumstances (the details of the person's conduct). See Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). "Analytically, resolving a mixed question of law and fact requires establishing the relevant facts, determining the applicable law, and then applying that law to the facts." Id. at 403, 858 P.2d 494. Here, "the essential facts," as found by the trial court, are verities on appeal.[11]Erwin, 133 Wash.App. at 150-51 *1118 51, ¶¶ 16-18, 135 P.3d 547. The process of determining the applicable law and applying it to these facts is a question of law that we review de novo. Tapper, 122 Wash.2d at 403, 858 P.2d 494; see also Main v. Taggares, 8 Wash.App. 6, 9, 504 P.2d 309 (1972) (whether agreement constituted a "broker's contract for a real estate commission" is a legal question).
¶ 19 Both Washington and California law provide that a person who negotiates the sale or lease of real property for compensation satisfies the statutory definition of "real estate broker." Under Washington law, a "`[r]eal estate broker,'" includes "a person [who], while acting for another for commissions or other compensation or the promise thereof," "[n]egotiates or offers to negotiate, either directly or indirectly, the purchase, sale, exchange, lease, or rental of real estate . . . for others," or "[e]ngages, directs, or assists . . . in negotiating or closing" such a transaction. Former RCW 18.85.010(1)(b), (e) (1998). Under California law, a "real estate broker" includes "a person who, for a compensation or in expectation of a compensation, . . . does or negotiates to do . . . for another . . . the purchase, sale or exchange of real property or . . . leases on real property." Cal. Bus. & Prof.Code § 10131(a), (b) (West).
¶ 20 Cotter argues that, "[u]nder the relevant statutes, the services Erwin provided are nothing other than brokerage services." Suppl. Br. of Pet'rs at 6. We agree. Under either the Washington or the California definition, the Agreement between Cotter and Erwin established a contract for Erwin to act as a real estate broker on Cotter's behalf. The Agreement defined itself as "an exclusive engagement to represent and right to sell or lease [designated] facility(ies)." Ex. 8, ¶ 4. In the Agreement, Cotter acknowledged that Erwin had "requested certain information in order to effectively market facility(ies)," Exhibit 8, ¶ 12, and Erwin "agree[d] not to advertise the facility(ies) for sale" or "to `list' said facility(ies) in any multiple listing service" "without the prior written consent" of Cotter. Ex. 8, ¶¶ 16, 17. The Agreement provided that Cotter would pay Erwin a "fee," calculated as a percentage of the given transaction, and required Cotter to acknowledge his "responsibility to pay [Erwin]" that "fee" in "any purchase and sale contract, lease or sublease agreement, and any escrow established." Ex. 8, ¶ 19. Taken together, these terms exemplify an agreement between a real estate broker and a client.
¶ 21 Moreover, applying either Washington or California law, we conclude that Erwin, in fact, acted as a real estate broker through the services he provided to Cotter. After Cotter and Erwin executed the Agreement, Cotter told Erwin to deal with Sleeth "regarding the status of efforts to achieve transfers" of Cotter's interests. CP at 33, FOF 28. Erwin's efforts generated "considerable communication" between Erwin and Sleeth, on the one hand, and Erwin and the Ensign Group, on the other, CP at 33, FOF 29, as well as meetings of Cotter, Sleeth, and the Ensign Group. Erwin's efforts resulted in negotiated leases between Cotter and the Ensign Group on two of the Texas SHC facilities and the four California SHC facilities.
¶ 22 Erwin argues unpersuasively that the specialized knowledge required to operate in the "niche field" of "senior health care transactions" creates a "distinction between a senior health care `consultant' and a traditional real estate `broker.'" Suppl. Br. of Resp'ts Carey D. Erwin & Healthcare Prop. Inc., at 15. Irrespective of any specialized knowledge, Erwin, "while acting for [Cotter] for . . . compensation or the promise thereof," "[n]egotiat[ed], . . . either directly or indirectly, the . . . lease . . . of real estate . . . for [Cotter]." RCW 18.85.010(1)(b). Likewise, "for a compensation or in expectation of a compensation, . . . [Erwin] negotiat[ed] to do . . . for [Cotter] . . . leases on real property." CAL. BUS. & PROF.CODE § 10131(b). In so doing, Erwin acted as a real estate broker under Washington and California law.
¶ 23 Nor can we agree with the Court of Appeals that Erwin did not act as a real estate broker because the Agreement was not "a typical `listing agreement,'" but rather "a hybrid `consulting agreement' calculated to capitalize on Erwin's unique expertise in this highly regulated industry and his contacts *1119 in the industry throughout the country." Erwin, 133 Wash.App. at 153, ¶ 26, 135 P.3d 547. It is well settled in Washington that the label applied to an instrument does not determine, as a matter of law, whether the services provided pursuant to it are those of a real estate broker. Main, 8 Wash.App. at 10, 504 P.2d 309 (citing Shorewood, Inc. v. Standring, 19 Wash.2d 627, 638, 144 P.2d 243 (1943)).
¶ 24 Moreover, the fact that the Agreement's purpose was "completely different from regular real estate activity in terms of the properties involved and the interstate range of possible transactions," does not change Erwin into something other that a real estate broker. CP at 31, FOF 20 (emphasis added). Finding that Erwin handled only a discrete category of properties that he marketed to an interstate base of prospective buyers merely describes the narrow subset of the real estate market within which Erwin operated. The essential nature of Erwin's conduct remains that of a real estate broker.
¶ 25 Pursuant to the Agreement and in expectation of compensation, Erwin provided services to Cotter for the purpose of achieving the transfer of Cotter's interests in several SHC facilities. We hold that, in so doing, under either Washington or California law, Erwin acted as a real estate broker.
B. The parties' contractual choice of Washington law is effective
¶ 26 The Agreement includes a choice-of-law provision, in which the parties agreed to have any disputes decided by Washington law, and a forum selection clause, through which the parties agreed to litigate those disputes in the jurisdiction of Washington.[12] The parties dispute whether the Agreement's choice-of-law provision is effective.[13] Choice of law is a question of law that we review de novo. Seizer v. Sessions, 132 Wash.2d 642, 650, 940 P.2d 261 (1997) (reviewing de novo the Court of Appeals choice-of-law determination); Ito Int'l Corp. v. Prescott, Inc., 83 Wash.App. 282, 288, 921 P.2d 566 (1996) (whether a "contract's choice-of-law provision is invalid . . . is a question of law that we review de novo.").
¶ 27 This case does not present a classic conflict of laws problem in which the forum state undertakes a conflict of laws analysis to determine whether the contractually chosen law or forum law will govern. Here, although the parties chose Washington law and the forum is Washington, Cotter argues that the law of Californianeither the parties' chosen law nor the law of the forumshould apply.
¶ 28 Nor does either party argue that the contractual choice of law is a product of the parties' unequal bargaining power or some other unconscionable condition. This case involves a freely negotiated contract between Cotter and Erwin, two highly experienced and successful business people who explicitly selected Washington law to govern their contract. Other terms included in the Agreement reflect that Cotter understood the potential ramifications of this choice. For example, anticipating that the Agreement might extend to SHC facilities "located in a state other than the state of Washington," Cotter "expressly acknowledge[d]" that he was "not knowingly entering into an agreement which [was] illegal by contracting with [a] real estate broker . . . not licensed in [the] state where facilities [were] located." *1120 Ex. 8, ¶ 9. Cotter also agreed "to waive any such provision that would allow for a contest of fees based on the fact that [Erwin was] not licensed as a real estate broker in the state where facilities [were] located."[14] Ex. 8, ¶ 9. As Erwin suggests, the explicit terms of the Agreement "readily evidence that the parties wanted to create an enforceable relationship and tried diligently to do so." Suppl. Br. of Resp'ts at 10.
¶ 29 Erwin argues that this court should enforce the parties' contractual choice of Washington law. Cotter argues that California law should govern, notwithstanding the contractual choice-of-law provision. Resolving this dispute requires that we determine (1) whether there is an actual conflict of laws and, if so, (2) whether the Agreement's choice-of-law provision, selecting Washington law, is effective.
1. An actual conflict of laws exists between the laws of Washington and California with respect to Erwin's claim for fees
¶ 30 "When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." Seizer, 132 Wash.2d at 648, 940 P.2d 261 (citing Burnside v. Simpson Paper Co., 123 Wash.2d 93, 100-01, 864 P.2d 937 (1994)). If the result for a particular issue "is different under the law of the two states, there is a `real' conflict." Id. at 648, 940 P.2d 261 (citing Pac. Gamble Robinson Co. v. Lapp, 95 Wash.2d 341, 344-45, 622 P.2d 850 (1980), overruling on other grounds recognized by Haley v. Highland, 142 Wash.2d 135, 12 P.3d 119 (2000)). "[W]here laws or interests of concerned states do not conflict," the situation presents "a `false' conflict" and "the presumptive local law is applied." Id. at 648-49, 940 P.2d 261 (quoting Burnside, 123 Wash.2d at 101, 864 P.2d 937).
¶ 31 There is an actual conflict between the laws of Washington and the laws of California with respect to Erwin claiming fees under the Agreement for his services as a real estate broker. Both Washington and California law make it unlawful to operate as a real estate broker within each state, respectively, without possessing an in-state license.[15] If Erwin and Cotter were both California residents and all of the events material to this dispute had occurred in California, then the Agreement would be unenforceable because Erwin lacked a California broker's license. See In re Estate of Baldwin, 34 Cal.App.3d 596, 110 Cal.Rptr. 189, 194 (1973) (California contract employing a person without a California broker's license as a real estate broker is "illegal, void and unenforceable"). By contrast, if Erwin and Cotter were both Washington residents and all material events had occurred in Washington, the Agreement would be enforceable because Erwin did have a Washington broker's license.
¶ 32 These results are differentthus an actual conflict exists.[16]
2. The Agreement's choice-of-law provision, selecting Washington law, is effective
¶ 33 Having determined that an actual conflict of laws exists, we must now determine whether the parties' contractual choice of Washington law is effective. Since 1967, Washington has followed the most significant relationship test of the Restatement (Second) Conflict of Laws (1971) (hereinafter Restatement) when resolving contractual *1121 choice-of-law problems in which the parties did not make an express choice of law.[17]Mulcahy v. Farmers Ins. Co. of Wash., 152 Wash.2d 92, 100, 95 P.3d 313 (2004). Section 187 of the Restatement provides the rule for conflict of laws problems in which the parties have made an express contractual choice of law. See O'Brien v. Shearson Hayden Stone, Inc., 90 Wash.2d 680, 685, 586 P.2d 830 (1978) (invalidating contractual choice of New York law that permitted charging interest rate deemed usurious in Washington). We adopt section 187 as the law of Washington when resolving conflict of laws issues in which the parties have made an express contractual choice of law to govern their contractual rights and duties.[18] We apply section 187 here to decide whether the parties' contractual choice of Washington law is effective.
¶ 34 Restatement section 187 provides as follows:
"§ 187. Law of the State Chosen by the Parties
(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law."
O'Brien, 90 Wash.2d at 685, 586 P.2d 830 (quoting RESTATEMENT § 187).
¶ 35 Erwin argues, incorrectly, that if section 187 applies, then section 187(1) provides the rubric for our analysis. Section 187(1) governs "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." (Emphasis added.) Erwin asserts that the parties included "an explicit provision" in their Agreement directed at resolving the "particular issue . . . generated by Cotter's agreement to pay Erwin to arrange a series of . . . transactions." Erwin, 133 Wash.App. at 152, ¶ 22, 135 P.3d 547. But section 187(1) does not apply simply because the parties included language in their contract purporting to resolve a "particular issue" by "an explicit provision."
¶ 36 Section 187(1) applies only when the "particular issue" is one that the parties "could have resolved" by contract. (Emphasis added.) It provides "for incorporation by reference," allowing parties to adopt in a comprehensive fashion the gap-filling contractual rules of the chosen state's law. RESTATEMENT § 187 cmt c. By contrast, section 187(2) applies to particular issues that "the parties could not have determined by explicit agreement," such as those "involving *1122 capacity, formalities[,] and substantial validity." Id. cmt. d (emphasis added). The particular issue here involves the substantial validity of the parties' agreement for Cotter to pay Erwin fees arising from Erwin's services as a real estate broker  it therefore falls under section 187(2), not section 187(1).
¶ 37 Section 187(2) directs that the parties' choice of law will still be applied "even if the particular issue is one which the parties could not have resolved by an explicit provision[,] . . . unless" either of two exceptions is satisfied. Cotter contends that the section 187(2)(b) exception is satisfied[19] and that analysis thereunder dictates that California law, rather than the parties' choice of Washington law, should apply.
¶ 38 Under the section 187(2)(b) exception "three questions are posed," all of which must be answered in the affirmative for the exception to apply. O'Brien, 90 Wash.2d at 685, 586 P.2d 830. To wit, application of the parties' chosen law must be "[(1)] contrary to a fundamental policy of a state [(2)] which has a materially greater interest than the chosen state in the determination of the particular issue and [(3)] which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." RESTATEMENT § 187(2)(b). Inserting the facts presented here, we must inquire (1) whether applying Washington's real estate broker licensing law is contrary to a fundamental policy of California; (2) whether California has a materially greater interest than Washington in the determination of the contract validity issue; and (3) whether, under the rule of Restatement section 188, California would be the state of applicable law in the absence of an effective choice of law by the parties. As explained below, questions one and two must be answered in the negative. Because all three questions are not answered in the affirmative, the section 187(2)(b) exception is not satisfied, and the parties' choice of Washington law remains in effect.
¶ 39 First, applying Washington's real estate broker licensing law is not contrary to the fundamental policy of California. Cotter asserts that the policy underlying "California's licensing requirements is `to protect the public from the perils incident to dealing with incompetent or untrustworthy real estate practitioners.'" Br. of Appellants at 35 (quoting Schantz v. Ellsworth, 19 Cal.App.3d 289, 96 Cal.Rptr. 783, 785 (1971)). However, Cotter fails to demonstrate that applying Washington law here contravenes that policy  Cotter neither claims that Erwin was "incompetent or untrustworthy" nor claims that his interests were harmed through his dealings with Erwin. California also recognizes a policy that its real estate broker licensing law "should not be so literally construed as to require exact compliance `if it would transform the statute into an unwarranted shield for the avoidance of a just obligation.'" Baldwin, 110 Cal.Rptr. at 195 (quoting Schantz, 96 Cal.Rptr. at 785).
¶ 40 Cotter also argues that "[a]pplying Washington law offends California policy because the [A]greement and Erwin's services are illegal in California." Reply Br. at 13. This argument is unsound because it is circular  Cotter assumes his conclusion, that California law applies, as a premise in his argument that applying Washington law is contrary to California policy and therefore California law applies. Services that Erwin performed in Washington are not illegal in California. California's broker licensing statutes do not regulate out-of-state acts performed by a broker licensed in another state, even when those acts relate to California realty. Consul Ltd. v. Solide Enters., Inc., 802 F.2d 1143, 1149-51 (9th Cir.1986) (reaching conclusion based on California statutes' use of "within this state" language and comprehensive review of foreign authority). The trial court determined that "Erwin performed a good deal of work in Washington." CP at 38, COL 10. California has no interest in this matter to the extent that Erwin seeks to collect fees for that work.
¶ 41 Second, California does not have a materially greater interest than Washington in the determination of the contract validity *1123 issue. Cotter claims that "California's interest in the resolution of this contract dispute is `obvious'  the Agreement provides for a `business practice' that is unlawful in California," contrary to California's "detailed statutory scheme . . . to `regulate' brokerage activities in the state and `deter' unlicensed brokerage activities." Br. of Appellants at 32. This argument, too, is circular  Cotter's conclusion, that California law applies, is a necessary prerequisite to Erwin's business practice being illegal in California, the premise supporting Cotter's conclusion that California law applies. Moreover, applying Washington law to resolve the fee dispute between Erwin and Cotter does not interfere with California's interest in regulating brokerage activities in California. The California Real Estate Commissioner remains free to pursue penalties against Erwin for the unlawful provision of real estate broker services in California if doing so were deemed appropriate.
¶ 42 Cotter additionally argues that Washington "has little interest in the application of its statutes governing real estate brokers because Washington's contacts with the transaction are minimal." Br. of Appellants at 33. But weighing the relative interests of California and Washington "does not involve merely counting the contacts." Potlatch No. 1 Fed. Credit Union v. Kennedy, 76 Wash.2d 806, 810, 459 P.2d 32 (1969). "`[T]he interest of a state in having its contract rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and upon the relation of the state to the transaction and the parties.'" Id. (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 188 cmt. c (Proposed Official Draft 1968)).
¶ 43 With respect to purely California interests, California's interest in deterring unlicensed brokerage activities to protect the California public from "incompetent or untrustworthy real estate practitioners," Schantz, 96 Cal.Rptr. at 785, carries relatively little weight because Cotter, the real party in interest receiving the services at issue here, is not a California resident. California's prohibition on unlicensed brokers bringing suit to collect commission in California, see California Business and Professions Code § 10136 (West), evidences an interest in reducing the burden on California's courts. However, this interest is not triggered because the instant litigation is occurring in Washington courts. And, as stated above, California's interest in regulating the provision of brokerage services in California is untouched because California remains free to prosecute Erwin should doing so be deemed appropriate.
¶ 44 Both California and Washington have interests in protecting the justifiable expectations of the contracting parties. The Restatement, expounding on core choice-of-law principles, explains that in applying section 187, "protecting the justified expectations of the parties . . . come[s] to the fore." RESTATEMENT § 6 cmt. c. "Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Id. cmt. g. Likewise, "[p]redictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions." Id. cmt. i. Here, the justifiable expectations of Cotter and Erwin were memorialized in the Agreement, a freely negotiated contract between two highly experienced and successful business people who defined in advance the terms of their business relationship and explicitly chose Washington law to govern any disputes.
¶ 45 Finally, Washington has a strong interest in providing Washington residents, such as Erwin and Healthcare Properties, Inc., with a forum for recovering compensation for services they render pursuant to contract. Comparing California's and Washington's interests in this particular issue, it cannot be said that California's interests materially outweigh those of Washington.
¶ 46 Third, under the rule of Restatement section 188, California would not necessarily be the state of applicable law in the absence of an effective choice of law by the parties. However, assuming for the sake of argument that, as Cotter asserts, "[a]bsent the choice of law provision, California law would govern *1124 this transaction," Br. of Appellant at 30, Cotter would have succeeded in establishing only the third of the three requirements necessary to satisfy the section 187(2)(b) exception. As explained above, applying Washington's real estate broker licensing law is not contrary to a fundamental policy of California. Nor does California have a materially greater interest than Washington in the determination of the contract validity issue. Since, at minimum, requirements one and two of the section 187(2)(b) exception are not satisfied, the parties' choice of Washington law remains effective.
¶ 47 The "[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." RESTATEMENT § 187 cmt. e. "These objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this way, certainty and predictability of result are most likely to be secured." Id. As the Court of Appeals concluded, here "the interests of the parties are best served by leaving them exactly where they placed themselves  litigating this dispute in Washington" and under Washington law. Erwin, 133 Wash.App. at 154, ¶ 30, 135 P.3d 547. We hold that the parties' contractual choice of Washington law is effective.
C. Under Washington law, Erwin, a Washington-licensed real estate broker, can maintain a claim for fees arising from the leasing of Cotter's California SHC facilities
¶ 48 Finally, Cotter argues, without success, that "even if Washington law applies, the . . . Agreement is not enforceable." Pet. for Review at 19. Cotter points to Washington's requirement that a real estate broker must be "`duly licensed'" in order to bring suit for the collection of compensation as a broker in Washington. Reply Br. at 20-21 (quoting RCW 18.85.100). Cotter urges this court to interpret "`duly licensed'" as incorporating into Washington's licensing scheme the licensing requirements of California and suggests that "Erwin is not `duly licensed' for the purpose of bringing this action . . . to collect a commission for leases in California of California . . . facilities under a contract made and primarily performed in California." Id. (quoting RCW 18.85.100).
¶ 49 RCW 18.85.100 provides that "[n]o suit or action shall be brought for the collection of compensation as a real estate broker . . . without alleging and proving that the plaintiff was a duly licensed real estate broker . . . prior to" contracting to provide such services. As Erwin correctly asserts, RCW 18.85.100 "is a Washington statute and, as such, regulates only `acts' within Washington." Suppl. Br. of Resp'ts at 5.
¶ 50 Erwin was a Washington resident at all times material hereto. Erwin was and is a licensed Washington real estate broker who may legally provide real estate broker services in Washington. Erwin performed a good deal of the services pursuant to the Agreement in Washington. Pursuant to RCW 18.85.100, Erwin is entitled to maintain an action to collect his fees in Washington courts. We hold that under Washington law, Erwin, as a Washington-licensed broker, may maintain a claim for fees arising from leases of Cotter's California SHC facilities.
D. Attorney fees and costs
¶ 51 Erwin is the prevailing party. We hold that, as such, he is entitled to fees and costs on appeal pursuant to RAP 14.1, 18.1, and the terms of the Agreement. Ex. 8, ¶ 5.

IV. CONCLUSION
¶ 52 We hold that, in providing services to Cotter pursuant to their Agreement, Erwin did act as a real estate broker. We hold that the parties' contractual choice of Washington law is effective and that therefore Washington law governs the Agreement. Applying Washington law, we hold that Erwin can maintain a claim for fees arising from the leasing of Cotter's California SHC facilities. We reverse in part, affirm in part, and affirm the judgment of the Court of Appeals. We remand to the trial court for actions consistent with this opinion.
*1125 WE CONCUR: GERRY L. ALEXANDER, Chief Justice, TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, BARBARA A. MADSEN, RICHARD B. SANDERS, JAMES M. JOHNSON, BOBBE J. BRIDGE, Justices.
NOTES
[1] In addition to leasing fees arising from Cotter's California facilities, at trial and before the Court of Appeals, the parties disputed leasing fees arising from two of Cotter's Texas facilities. At oral argument before this court, Erwin's counsel indicated that, although the issue of those Texas leasing fees had not been resolved, it had not been the focus of the parties' arguments before this court because "from the standpoint of the economics of this case, [the fees] are very small." Wash. State Supreme Court oral argument, Erwin v. Cotter Health Ctrs., No. 78928-2 (May 22, 2007), audio recording by TVW, Washington State's Public Affairs Network, available at http:// www.tvw.org (29:28 to 30:25).
[2] Erwin does not dispute that during the times material to this matter he was not licensed as a real estate broker in either California or Texas.
[3] Cotter "personally owned" five facilities and "owned" two additional facilities in Texas. Clerk's Papers (CP) at 29, Findings of Fact (FOF) 5. Cotter "personally owned" two facilities in Willits and Sonoma, California, and solely owned the two California corporations, Cotter Health Centers, Inc. and Coachella House, Inc., each of which owned a facility in California. CP at 29, FOF 6.
[4] The Agreement designated Carey D. Erwin and Healthcare Properties, Inc., as "`Consultant,'" and Erwin signed as "President of Healthcare Properties, Inc." CP at 31-32, FOF 19, 26. As specified by Sleeth, the Agreement designated "`Cotter Health Centers'" as "`Client.'" CP at 32, FOF 25. Cotter signed the Agreement "simply as `Owner.'" CP at 32, FOF 26. "The Agreement did not specify the Client' as a corporate entity, and Mr. Cotter did not specifically sign as a corporate representative." CP at 32, FOF 26.
[5] The Agreement also provided that interest would accrue in the event that fees were not paid in accordance with its terms. Ex. 8, ¶ 4; CP at 33, FOF 32.
[6] The aforementioned Texas SHC facilities leased to Camlu were among those listed. Thereafter, while Erwin continued to represent Camlu with regard to transferring its leases to the Ensign Group, he also represented Cotter with regard to negotiating the extension of those leases to a longer term. In August through September 1999, the Camlu leases were successfully renegotiated to a longer term and transferred to the Ensign Group. Erwin's fee was paid by Camlu and Cotter and is not at issue in this case.
[7] The trial court found that this "considerable communication" was "manifested in Exhibits 11, 12, 13, 17-39, 40, and 51-56." CP at 33, FOF 29.
[8] The contingencies that prevented Cotter from transferring the four California SHC facilities to the Ensign Group in 1999 included (1) pending litigation by Cotter to break the current lessee's long-term leases due to the lessee's unauthorized assignment of operational control to a third party, (2) the lessee's September 1999 bankruptcy filing which rendered the leases subject to the bankruptcy proceeding, and (3) the bankruptcy court's delay in releasing the four California leases until November 2001.
[9] See supra note 1.
[10] Washington's and California's definitions of "real estate broker" are the same in relevant part, allowing us to resolve this issue without addressing the conflict of laws question posed by issue two.
[11] The trial court made extensive findings of fact, CP at 28-37, FOF 1-55, some of which Cotter challenged on appeal. "An appellate court will uphold challenged findings of fact and treat the finding: as verities on appeal if the findings are supported by substantial evidence." In re Estate of Jones, 152 Wash.2d 1, 8, 93 P.3d 147 (2004). The Court of Appeals determined that the trial court's findings of fact were supported by substantial evidence, stating "the essential facts are easily supported by this record." Erwin, 133 Wash.App. at 150-51, ¶ ¶ 16-18, 135 P.3d 547. We agree and therefore accept the trial court's findings as verities for the purposes of our review.
[12] Paragraph seven of the Agreement provides that "[a]ny dispute regarding the interpretation or enforcement of this Agreement shall by agreement of the parties be resolved in the [s]tate of Washington pursuant to its laws as the parties acknowledge that jurisdiction lies therein." Ex. 8, ¶ 7. Through the choice-of-law provision, specifying that "any dispute . . . shall . . . be resolved . . . pursuant to [the] laws [of the state of Washington]," the parties agreed that contract disputes would be governed by Washington law. Id. Through the forum selection clause, specifying that "any dispute . . . shall . . . be resolved in the [s]tate of Washington . . . as . . . jurisdiction lies therein," the parties selected Washington to be the forum for any disputes. Id.
[13] Cotter has not challenged the Agreement's forum selection clause in a Washington court, rendering extraneous the Court of Appeals' discussion of the appropriate standard of review for forum selection clauses. See Erwin, 133 Wash. App. at 150, ¶ 15, 135 P.3d 547. We note also that elsewhere in its decision, the Court of Appeals appears to have erroneously used the terms "forum selection" and "choice of law" interchangeably. See, e.g., id. at 152, ¶ 23, 135 P.3d 547.
[14] Cotter contends that "[p]arties cannot agree by contract to waive statutes and regulations." Reply Br. at 16. While expressing no opinion as to the waiver's legality, we consider it as evidence, both that Cotter was aware that fees potentially could be contested on the ground that Erwin was not licensed as a real estate broker in a given state and that Cotter agreed at the outset not to maintain such a contest.
[15] Doing so constitutes a "gross misdemeanor" in Washington, RCW 18.85.340, and a "public offense" in California. CAL. BUS. & PROF. CODE § 10139 (West Supp.).
[16] The Court of Appeals' determination to the contrary rested on its conclusion that Erwin did not act as a real estate broker, so no illegality occurred under either California or Washington law. Erwin, 133 Wash.App. at 152-53, ¶ ¶ 23-26, 135 P.3d 547.
[17] Washington follows the Restatement's most significant relationship test in other conflict of laws situations as well. See, e.g., Seizer, 132 Wash.2d at 651, 940 P.2d 261 (adopting Restatement § 258 "to apply to cases involving property interests in moveables acquired during marriage"); Rice v. Dow Chem. Co., 124 Wash.2d 205, 213, 875 P.2d 1213 (1994) (adopting Restatement § 145 to apply to cases involving rights and liabilities in torts).
[18] We decline Erwin's suggestion to adopt as the law of Washington the rule of McGill v. Hill, 31 Wash.App. 542, 644 P.2d 680 (1982). McGill held that "[a]n express choice of law clause in a contract will be given effect, as expressing the intent of the parties, so long as application of the chosen law does not violate the fundamental public policy of the forum state." Id. at 547, 644 P.2d 680. Section 187, properly applied, not only incorporates the McGill rule, but additionally offers a nuanced, comprehensive approach to conflict of laws problems.
[19] The section 187(2)(a) exception does not apply here because, as Cotter concedes, "choosing Washington law was not unreasonable." Br. of Appellants at 29.