**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

SEP 3 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ACD DISTRIBUTION LLC,

          Plaintiff-Appellant,

   v.

WIZARDS OF THE COAST LLC,

          Defendant-Appellee.

No.   20-35828
       20-35986

D.C. No. 2:18-cv-01517-JLR

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted August 11, 2021
Seattle, Washington

Before:  EBEL,[**] BRESS, and VANDYKE, Circuit Judges.
Dissent by Judge EBEL

    ACD Distribution LLC ("ACD"), a Wisconsin distributor, appeals the district

court's order granting judgment on the pleadings under Federal Rule of Civil

Procedure 12(c) in favor of Wizards of the Coast LLC ("Wizards"), a Washington-

---

    [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable David M. Ebel, United States Circuit Judge for the
U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

based game publisher. ACD also appeals the district court's order granting attorney's fees and costs to Wizards. The district court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

1. We review de novo an order granting judgment on the pleadings. *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017). While ACD argues that Wisconsin's Fair Dealership Law ("WFDL") prevented Wizards from canceling its distribution agreement with ACD "without good cause," Wis. Stat. § 135.03, the district court correctly concluded that it must apply Washington law—which lacks an analogous "good cause" requirement—based on the Washington choice-of-law provision in the parties' agreement.

We reject ACD's threshold argument that the contractual choice-of-law provision does not cover this dispute. ACD failed to preserve this argument below, and so waived it. *See United States v. Anekwu*, 695 F.3d 967, 985 (9th Cir. 2012). Regardless, the argument is meritless. The provision states that "[t]his Agreement will be governed by and interpreted in accordance with the laws of the State of Washington, without reference to conflict of laws." This clause is broad enough to encompass the parties' dispute. ACD's claim—whether the WFDL applies— presents a dispute "governed by" the parties' agreement because it implicates the contract's renewal and termination provisions. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (contracts must be interpreted based on

2

"the reasonable meaning of the words used").

Applying Washington's choice-of-law rules, we agree with the district court that Washington law, and not Wisconsin law, applies. The parties do not dispute that Washington's choice-of-law rules apply and that an "actual conflict" exists between Washington and Wisconsin law. *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2017) (quotations omitted); *see Lazar v. Kroncke*, 862 F.3d 1186, 1194 (9th Cir. 2017).

Washington has adopted the Restatement (Second) of Conflict of Laws. *See Erwin*, 167 P.3d at 1121–22. As relevant here, under Restatement § 187(2), the law of the state chosen by the parties will be applied unless its application "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Assuming the WFDL reflects a "fundamental policy" of Wisconsin, ACD has not shown that Wisconsin has "materially greater interest" in the determination of when Wizards may terminate its agreement with ACD.[1]

While Wisconsin has an evident policy favoring distributors like ACD

---

[1] Because we conclude that ACD cannot meet § 187(2)'s "materially greater interest" requirement, we need not address whether ACD can make the other necessary showings that § 187(2) requires. We also need not address whether the parties' choice-of-law provision would be independently enforceable under § 187(1).

3

(defined by the WFDL as "dealers"), Washington has not adopted such a policy. ACD has provided no basis for us to conclude that Wisconsin has a "*materially greater interest*" here than Washington, Restatement (Second) of Conflicts of Laws § 187(2), given Washington's effective decision not to adopt a law like the WFDL. That is especially so when, as the district court recognized, "the Wisconsin dealer specifically agreed to a contract that requires the application of out-of-state law," as well as venue in Washington courts.

Moreover, Washington's Supreme Court has recognized that Washington has an "interest[] in protecting the justifiable expectations of . . . contracting parties," which includes "letting the parties choose the law to govern the validity of the contract and the rights created thereby." *Erwin*, 167 P.3d at 1123–24 (quotations omitted). ACD has not shown why Wisconsin's interest in protecting its in-state dealers overrides the "justifiable expectations . . . memorialized in . . . a freely negotiated contract between two highly experienced and successful [businesses] who defined in advance the terms of their business relationship and explicitly chose Washington law to govern any disputes." *Id.* at 1123.

Finally, although ACD and our fine dissenting colleague reiterate that the WFDL sets forth Wisconsin's specific policy disfavoring the termination of dealers without good cause, *see* Wis. Stat. §§ 135.025(2), .03, the Washington Supreme Court has rejected such reasoning as "circular" because it assumes that Wisconsin

4

law applies in the first place.  *See Erwin*, 167 P.3d at 1123.[2]

2.      ACD's challenge to the district court's award of attorney's fees and costs also fails.  We review de novo "questions of law concerning entitlement to attorney's fees" and for clear error any underlying factual findings.  *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013); *Native Vill. Of Quinhaguk v. United States*, 307 F.3d 1075, 1079 (9th Cir. 2002).

The parties' agreement provided that "[i]n the event legal action is necessary to enforce the terms of this Agreement, Wizards will be entitled to collect from [ACD] any . . . reasonable attorneys' fees, court costs, and other expenses incurred by Wizards for such action."  The district court correctly determined that legal action by Wizards was necessary to enforce the terms of the agreement, namely, the provisions allowing Wizards not to renew the contract.  *See Bangerter v. Hat Island Cmty. Ass'n*, 472 P.3d 998, 1013 (Wash. Ct. App. 2020), *review granted on other grounds sub nom. Surowiecki v. Hat Island Cmty. Ass'n*, 479 P.3d 1162 (Wash. 2021) (unpublished table decision).

**AFFIRMED.**

---

[2] The authorities on which the dissent relies are inapposite, as none of those cases involved the application of Washington's choice of law rules, as interpreted by Washington courts.  Our decision is grounded in *Erwin*, the leading case from the Washington Supreme Court interpreting § 187(2).  The cases the dissent cites also involve different factual scenarios.  As the dissent notes, "[e]ach case will depend on its individual circumstances."

**20-35828 & 20-35986, <u>ACD Distribution LLC v. Wizards of the Coast LLC</u>**

**EBEL**, Circuit Judge, dissenting.

Like the majority, I constrain myself to the materially-greater-interest analysis. Unlike the majority and the district court below, I conclude that Wisconsin had a materially greater interest in the determination of this dispute than did Washington.

We need look no further than the Wisconsin Fair Dealership Law (WFDL) itself for a declaration of Wisconsin's interest: "promot[ing] the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis" and "protect[ing] dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships." Wis. Stat. § 135.025(2). This protection is so important to Wisconsin that the state legislature provided that it may not be waived by contracting parties. <u>Id.</u> § 135.025(3).

The strength of this interest is further supported by caselaw deeming the WFDL a "strong state public policy," <u>Bush v. Nat'l Sch. Studios, Inc.</u>, 407 N.W.2d 883, 884 (Wis. 1987), such that parties cannot "avoid[] the WFDL without deciding to forego a contract altogether," <u>Morley-Murphy Co. v. Zenith Elecs. Corp.</u>, 142 F.3d 373, 381 (7th Cir. 1998). Other courts have also held

that anti-waiver provisions in dealer-protection statutes similar to the WFDL reflect important state interests. See, e.g., Volvo Constr. Equip N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 610–11 (4th Cir. 2004); Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 391 (7th Cir. 2003); New Eng. Surfaces v. E.I. du Pont de Nemours & Co., 546 F.3d 1, 10 (1st Cir. 2008); see also § 187 cmt. g (recognizing the importance of a statute "designed to protect a person against the oppressive use of superior bargaining power").

On the other side of the equation, Washington has not evinced any specific interest in the relationship between grantors like Wizards and distributors like ACD. Instead, Washington's only interest in this dispute is in "protecting the justifiable expectations of the contracting parties."[1] Erwin v. Cotter Health Ctrs., 167 P.3d 1112, 1123 (Wash. 2007). That is undoubtedly a significant interest, but it is also one subject to significant limits. Most importantly, Washington applies § 187(2)'s balancing test for determining whether a contractual choice of law is enforceable—that means that parties

---

[1] This is the only Washington interest considered by the district court below, and the only one identified by Wizards in its brief on appeal. Prompted by an argument Wizards raised for the first time at oral argument, the majority divines a more-specific Washington interest rooted in "Washington's effective decision not to adopt a law like the WFDL." (Maj. Op. 3.) I find Wizard's late-raised argument unpersuasive because legislative "inaction is not a reliable guide to legislative intent." Gen. Constr. Co. v. Castro, 401 F.3d 963, 970 (9th Cir. 2005).

cannot have a justifiable expectation that their choice-of-law provision is necessarily enforceable. After all, it would be circular to enforce a choice-of-Washington-law provision on the basis that Washington has a materially greater interest simply because the parties chose Washington law.

Instead of simply enforcing the choice-of-Washington-law provision, Washington's choice-of-law principles direct us to weigh Washington's general interest against Wisconsin's specific interest. Under similar circumstances, this Court and others have concluded that a dealer-protection statute like the WFDL evinces an interest materially greater than a general interest in the freedom to contract. See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1004 (9th Cir. 2010); Volvo Constr., 386 F.3d at 610–11 (4th Cir.); Wright-Moore Corp. v. Ricoh Corp., 908 F.2d 129, 133 (7th Cir. 1990). I would reach the same conclusion here.

A few final, brief thoughts. First, although Erwin acknowledges Washington's interest in protecting the justifiable expectations of the contracting parties, that case does not control the outcome here. The Erwin court concluded that Washington had the stronger interest there because California, the state weighed against Washington, had no interest in the dispute. 167 P.3d at 1122–23. That is not the case here, where Wisconsin has an undeniable interest in protecting its in-state distributors like ACD.

Second, deeming Wisconsin's interest materially greater here does not mean that one state's protectionist scheme will always prevail over a contractual choice-of-law provision and another state's laissez faire regime. The materially-greater-interest prong is only a small piece of the Restatement analysis as to whether a choice-of-law provision is enforceable. Each case will depend on its individual circumstances.

Third, Washington and its residents are not helplessly at the mercy of all foreign law. It is Washington that chose to adopt the Restatement's balancing test for determining the enforceability of choice-of-Washington-law provisions—had Washington wanted such a provision always to retain primacy, it could have simply said so. Instead, Washington recognized that in some circumstances, other considerations outweigh the parties' choice of law. See § 187 cmt. g ("Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interest and for state regulation.").

Finally, there is good reason for Washington to apply the Restatement's balancing test and not simply to favor all choice-of-Washington-law provisions: sometimes, Washington will want other states to apply Washington law despite a choice-of-law provision selecting some other state. For example, Washington has its own version of the WFDL, the Washington Franchise

Investment Protection Act (FIPA), which although not applicable in this case, protects franchisees from the unfair bargaining practices of franchise grantors. Wash. Rev. Code § 19.100.180. FIPA provides that "[a]ny agreement, condition, stipulation or provision, including a choice of law provision, purporting to bind any person to waive compliance with any provision of this chapter or any rule or order hereunder is void." Id. § 19.100.220 (emphasis added). This shows that Washington itself deems the public interest in protecting against the unfair use of superior bargaining power materially greater than the state's interest in enforcing a choice-of-law provision. See Rutter v. BX of Tri-Cities, Inc., 806 P.2d 1266, 1268 (Wash. Ct. App. 1991) (holding that FIPA voids a choice-of-California-law clause agreed to by a Washington franchisee).

Accordingly, if the positions here were reversed, and Wisconsin was deciding whether to apply FIPA to protect a Washington franchisee despite a contractual choice-of-Wisconsin-law provision, it is clear that Washington would want Wisconsin to do so. Washington would thus be likely to return the favor here.

For these reasons, I respectfully dissent.[2]

---

[2] Because I would reverse as to the choice-of-law issue, I would also reverse on the attorneys' fees issue.