**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 16 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NORA SELIM, | No. 23-35383 |
| Plaintiff-Appellant, | D.C. No. 2:22-cv-01227-JCC |
| v. | |
| FIVOS INC, a Delaware corporation, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Submitted July 12, 2024**
Seattle, Washington

Before: McKEOWN, CLIFTON, and DE ALBA, Circuit Judges.

Nora Selim appeals the district court's order denying her motion for partial

summary judgment that Egyptian law applied to her employment suit against her

former employer, Fivos, Inc. Selim only asserted claims under the Egyptian Labor

Act, and therefore, the district court's denial disposed of the case and rendered the

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

partial summary judgment order a final order.  Because the parties are familiar with the facts, we do not recount them here.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review de novo a district court's decision on summary judgment as well as choice-of-law issues, including the district court's interpretation of state law. *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1209 (9th Cir. 2017); *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012).  "In a diversity case, federal courts apply the substantive law of the forum in which the court is located," which in this case is Washington.  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) (internal quotation marks and citations omitted).  Thus, we must determine whether Washington or Egyptian law applies to this case under Washington's choice-of-law rules.

Washington's choice-of-law rules prescribe a two-part test.  First, we must determine whether there is "an actual conflict between the laws or interests of Washington and the laws or interests of another state" before engaging in a conflict of laws analysis.  *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007) (citation omitted).  "If the result for a particular issue is different under the law of the two states, there is a real conflict."  *Id.* (internal quotation marks and citation omitted).  Second, when a conflict exists and the parties have not made an express choice of law, we must apply the "most significant relationship test" as set forth in

2

the *Restatement (Second) of Conflict of Laws*. *Id.* at 1120–21.

Here, the parties agree—as they did below—that the result in this case would differ depending on whether Washington or Egyptian law applies. Hence, we must determine "which jurisdiction has the 'most significant relationship' to a given issue." *Burnside v. Simpson Paper Co.*, 864 P.2d 937, 940–41 (Wash. 1994). But the parties disagree as to which section of the *Restatement* Washington courts would apply for the "most significant relationship" test.

No Washington court has explicitly addressed which section of the *Restatement* applies to employment disputes without a written contract and involving statutory claims. And because this is a matter of first impression and an issue of state law, we refrain from deciding this question. Nonetheless, we look to the overarching principles of Section 6 of the *Restatement*, including "the relevant policies of the forum" and "other interested states" and "the protection of justified expectations," to "evaluate the significance of a relationship to the potentially interested states." *Pope Res. LP v. Certain Underwriters at Lloyd's, London*, 494 P.3d 1076, 1086 (Wash. Ct. App. 2021).

In "weigh[ing] the contacts with potentially interested states under the circumstances and in the context of relevant policy considerations," we conclude that Washington has the most significant relationship to Selim's employment relationship with Fivos. *Id.* First, Washington had the most contacts with Selim's

3

employment. Selim was initially hired by Fivos's subsidiary, Medstreaming, which is based in Washington. And even though Selim's work encompassed growing and managing Fivos's operations in Egypt, she also managed teams in the United States, remained an employee of Fivos instead of its Egyptian subsidiary, and reported directly to Fivos's CEO and Chief Technology Officer within the United States. Additionally, while Selim resided in Egypt during her employment, she "filed I-9 forms and tax returns in the United States indicating that she was a Washington resident."

These contacts are "useful in determining the expectations of the parties," which is that Washington law would apply. *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 459 P.2d 32, 35 (Wash. 1969). During her entire term of employment, Selim represented herself and was treated as a Washington employee for employment eligibility and payroll purposes. She had no awareness of Egyptian employment law until late 2020, eleven years after her hiring, and she still maintained her separate employment relationship with Fivos and paid deductions under U.S. and Washington law after this revelation. Also, two other agreements entered into between Selim and Medstreaming—a non-compete and a nondisclosure agreement—had choice-of-law provisions explicitly stating that Washington law would apply.

Finally, public policy weighs in favor of Washington. Washington has a

4

clear interest in regulating the employment of individuals who claim residency in Washington, who work for an employer that does business in Washington, and whose pay is deducted for state-paid family and medical leave insurance premiums. Washington also has "an interest in regulating the actions of corporations authorized to do business" there. *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1196 (Wash. Ct. App. 1997). Nothing counsels in favor of invoking Egypt's labor law. In view of the location, insurance, and tax implications, Washington has "interests superior to or inconsistent with" the interests of Egypt. *Kammerer v. W. Gear Corp.*, 635 P.2d 708, 712 (Wash. 1981) (citation omitted).

Because Selim's employment had the most contacts with Washington, the "justified expectations of the parties" were that Washington law would apply, and Washington has significant policy interests in regulating the state's employers, including their extraterritorial employees, Washington law applies to this dispute. *Potlatch No. 1*, 459 P.2d at 35.

**AFFIRMED.**

5