[No. 39931. Department Two. September 25, 1969.]

POTLATCH No. 1 FEDERAL CREDIT UNION, *Appellant,* v. ROY H. KENNEDY *et al., Defendants,* A. V. KENNEDY *et al., Respondents.**

*Reported in 459 P.2d 32.

*Donald W. Moore,* for appellant.

*S. Dean Arnold,* for respondents.

NEILL, J.—This appeal raises the single issue of whether the law of Idaho or the law of Washington is applicable in this action on a promissory note.

Roy H. Kennedy, a resident of Clarkston, Washington, applied to plaintiff, a federally chartered credit union, at its Lewiston, Idaho, office for a loan to be secured by his automobile and household goods. He was eligible for a loan by virtue of his employment at Potlatch Forests, Inc., at Lewiston, Idaho. The loan application was approved on condition that he obtain his brother, A. V. Kennedy, as cosigner on the promissory note.

A note for $3,575, a chattel mortgage and comaker's statement were prepared by plaintiff at its offices in Lewiston. The note and chattel mortgage were signed by Roy H. Kennedy and his wife in Lewiston. The note and comaker's statement were then taken to Clarkston by Roy H. Kennedy where they were signed by A. V. Kennedy at his place of employment without his wife's knowledge. Roy H. Kennedy then delivered the note and statement to plaintiff in Lewiston and received a check for the amount of the loan. The note was to be repaid by payroll deductions at Potlatch Forests, Inc., in Lewiston. Roy H. Kennedy's employment at Potlatch Forests, Inc., was terminated in April, 1966, and he made no payments on the note after August 1, 1967.

Plaintiff brought this action upon the note against Roy H. Kennedy and his wife, and A. V. Kennedy and Vivian Kennedy, his wife, and their respective marital communities. Roy H. Kennedy and his wife did not appear. A. V. Kennedy answered individually, as did his wife, Vivian Kennedy, who denied the liability as to herself and as to the marital community composed of A. V. Kennedy and herself.

The trial court found that the contract had the most significant relationship with the state of Washington and applied the law of that state. Plaintiff was granted a judgment against Roy H. Kennedy, his wife, and their community, and against A. V. Kennedy individually. The court ruled that plaintiff was not entitled to judgment against Vivian Kennedy nor against the community of A. V. Kennedy and Vivian Kennedy.

Plaintiff appeals. Error is assigned to the trial court's determination that the law of the state of Washington applies to this transaction, and to the conclusion of law that plaintiff was not entitled to judgment against the community composed of A. V. Kennedy and Vivian Kennedy.

A. V. Kennedy cosigned this note without the knowledge of his wife, and it is not disputed that the community composed of A. V. Kennedy and his wife received no benefit from Mr. Kennedy's assumption of this comaker's obligation.

■ Under the law of this state, community property is liable for the suretyship debt of one of the parties only if the community has been benefited by the obligation. *Zarbell v. Mantas*, 32 Wn.2d 920, 204 P.2d 203 (1949); *Sun Life Assur. Co. of Canada v. Outler*, 172 Wash. 540, 20 P.2d 1110 (1933); *Peterson v. Zimmerman*, 142 Wash. 385, 253 P. 642 (1927).

Under Idaho law, however, the community is liable for the separate debts of the husband, irrespective of whether they were incurred for the benefit of the community. *See* Idaho Code § 32-912 (1963); *Holt v. Empey*, 32 Idaho 106, 178 P. 703 (1919); *Gustin v. Byam*, 41 Idaho 538, 240 P. 600 (1925).

Therefore, if this transaction had taken place entirely in Idaho and involved only Idaho residents, plaintiff would have been entitled to judgment against the A. V. Kennedy community. If the transaction had taken place entirely in Washington involving only Washington residents, there would be no recovery against the community. The legislatures and courts of the two states have made conflicting

policy decisions with respect to this question. Idaho has chosen to recognize the interests of creditors over the interests of marital property in these situations. Washington has taken the opposite view. These two policy decisions come into direct conflict where, as here, the controversy involves an Idaho creditor and a Washington marital community. This, then, is not a "false conflict" of the type encountered in *Pacific States Cut Stone Co. v. Goble,* 70 Wn.2d 907, 425 P.2d 631 (1967). *See* Traynor, *Is This Conflict Really Necessary?,* 37 Tex. L. Rev. 655 (1959).

■ We have rather recently adopted the view that the validity and effect of a contract are governed by the law of the state which has the most significant relationship to the contract, except as to questions of usury and details of performance. *Baffin Land Corp. v. Monticello Motor Inn, Inc.,* 70 Wn.2d 893, 425 P.2d 623 (1967). A recent summary of this approach is contained in Restatement (Second), Conflict of Laws § 188 (Proposed Official Draft, 1968):

§ 188. Law Governing in Absence of Effective choice by the Parties.

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, as to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §6.

(2) In the absence of an effective choice of law by the parties (see §187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law

of this state will usually be applied, except as otherwise provided in §§189-199 and 203.

Normally, these same factors determine the law applicable to suretyship contracts. *See* Restatement (Second), Conflict of Laws § 194 (Proposed Official Draft, 1968).

Application of this principle does not involve merely counting the contacts. *See Baffin Land Corp. v. Monticello Motor Inn, supra*. Rather, these contacts are guidelines indicating where the interests of particular states may touch the transaction in question. For instance, the state of contracting (the place where the last act necessary to create a binding contract was performed) may be relatively insignificant unless it is also the state of the domicile of the parties or the state where performance is to be undertaken, in which case that state may have some real interest in protecting its residents or policing acts occurring within its borders. *See* Restatement (Second), Conflict of Laws § 188, *Comment e* (Proposed Official Draft, 1968). The contacts may also be useful in determining the expectations of the parties.

Certainly an identification of contacts is meaningless without consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue. These competing policies must also be weighed against the justified expectations of the parties. This approach was contemplated by the authors of the Proposed Official Draft of the Restatement (Second), Conflict of Laws in *Comment c* to § 188:

> *c. Purpose of contract rule.* The purpose sought to be achieved by the contract rules of the potentially interested states, and the relation of these states to the transaction and the parties, are important factors to be considered in determining the state of most significant relationship. This is because the interest of a state in having its contract rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and upon the relation of the state to the transaction and the parties. So the state where a party to the contract is domiciled has an obvious interest in the

application of its contract rule designed to protect that party against the unfair use of superior bargaining power. And a state where a contract provides that a given business practice is to be pursued has an obvious interest in the application of its rule designed to regulate or to deter that business practice. On the other hand, the purpose of a rule and the relation of a state to a transaction and the parties may indicate that the state has little or no interest in the application of that rule in the particular case. So a state may have little interest in the application of a rule designed to protect a party against the unfair use of superior bargaining power if the contract is to be performed in another state which is the domicil of the person seeking the rule's protection. And a state may have little interest in the application of a statute designed to regulate or to deter a certain business practice if the conduct complained of is to take place in another state.

Whether an invalidating rule should be applied will depend, among other things, upon whether the interest of the state in having its rule applied to strike down the contract outweighs in the particular case the value of protecting the justified expectations of the parties and upon whether some other state has a greater interest in the application of its own rule.

Courts of other jurisdictions have been giving increasing recognition to the competing policy interests of the various states involved in a particular occurrence or transaction. *See, e.g., Lilienthal v. Kaufman,* 239 Ore. 1, 395 P.2d 543 (1964); *Conklin v. Horner,* 38 Wis. 2d 468, 157 N.W.2d 579 (1968).

This case presents a single issue on which the interests and policies of Idaho and Washington collide, and that is whether the community of a cosigner of a note may be held liable on the note although the community derived no benefit therefrom. Idaho has certain obvious governmental interests in this transaction. It is the place where the plaintiff does business and the place where the contract was to be performed. Idaho's policy with respect to this issue seems to be derived from the interest in insuring the normalcy of business relations within its borders, and avoiding the use of community property as a device to avoid payment of just

debts by apparently solvent debtors. The record indicates that A. V. Kennedy has no property other than his share of the community assets; so, if community property cannot be levied upon, it is possible that plaintiff will not be paid.

Washington has an equally vital interest in this transaction. It is the domicile of the community of A. V. Kennedy and Vivian Kennedy. The property which would be executed upon in the event of a judgment against the community is located in Washington. The development of the community property system in Washington was an outgrowth of a larger movement toward improvement of the property rights of married women. Kirkwood, *Historical Background and Objectives of the Law of Community Property in the Pacific Coast States*, 11 Wash. L. Rev. 1 (1936). As it exists in this state, our system of community property is intricately tied to our system of family law, and constitutes the most important element of married women's property rights. The California court had the following comment on a somewhat similar problem, *Emery v. Emery*, 45 Cal. 2d 421, 428, 289 P.2d 218 (1955):

> We think that disabilities to sue and immunities from suit because of a family relationship are more properly determined by reference to the law of the state of the family domicile. That state has the primary responsibility for establishing and regulating the incidents of the family relationship and it is the only state in which the parties can, by participation in the legislative processes, effect a change in those incidents. Moreover, it is undesirable that the rights, duties, disabilities, and immunities conferred or imposed by the family relationship should constantly change as members of the family cross state boundaries during temporary absences from their home.

■ Turning to the expectations of the parties, it is difficult to determine which law Roy H. Kennedy, his wife, and A. V. Kennedy would have believed they were operating under, even if we were to assume they had even considered the matter and had discovered the difference between Idaho and Washington law. However, the expectations of A. V. Kennedy's wife, Vivian Kennedy, should also be considered. Under Washington law, she has a present

undivided one-half interest in and to the community property *e.g., In re Estate of Heringer,* 38 Wn.2d 399, 230 P.2d 297 (1951)). Although her husband is designated manager of this property by statute, his management power does not include the power to encumber community property for purposes not in the community interest. *E.g., see Hanley v. Most,* 9 Wn.2d 429, 115 P.2d 933 (1941). Vivian Kennedy, if she had even known of the transaction, could not have expected that her husband at his place of employment in Clarkston, Washington, would suddenly become vested with a new power under Idaho law to override these Washington restrictions on his management power.

Plaintiff credit union, on the other hand, was aware that it was dealing with Washington residents. It also knew that the property covered by the chattel mortgage executed by Roy H. Kennedy and his wife was located in Washington. It was also likely that most, if not all, of the community property of A. V. Kennedy and Vivian Kennedy would be situated in Washington. Therefore, if plaintiff had considered the matter, it would have been fairly certain that any execution of a judgment on the note or mortgage would have to be in Washington courts.

Courts have long recognized that they are not bound to decide all issues under the local law of a single state. *See* Restatement (Second), Conflict of Laws § 188, *Comment d* (Proposed Official Draft, 1968). Therefore, with respect to the issue now before us of whether the community property of Washington residents is subject to the suretyship obligation of the husband entered into with an Idaho company with no benefit to the community, we hold that the law of Washington has the most significant relationship to that portion of the transaction.

The wife's rights to her share of the community property, and the concurrent restrictions on the husband's power to manage that property, are basic to Washington law. We do not believe that the husband's power to manage this property should be varied by the laws of other states while the parties are resident in this state unless the wife has some reason to expect this variation. We have seriously

considered the governmental interest of the state of Idaho in protecting its creditors, but do not believe they are paramount in this case.

Judgment affirmed.

HUNTER, C. J., ROSELLINI and HALE, JJ., and JOHNSEN, J. Pro Tem., concur.