FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2016 SEP 12 AM 8: 41



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SHANGHAI COMMERCIAL BANK LIMITED, a banking corporation organized and existing under the Laws of Hong Kong Special Administrative Region, the People's Republic of China, | ) ) ) ) ) ) ) | No. 73956-5-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| KUNG DA CHANG and "JANE DOE" CHANG, husband and wife, and the marital community comprised thereof, | ) ) ) ) ) ) | |
| Appellants. | ) ) | FILED: September 12, 2016 |

LEACH, J. — Kung Da Chang and Michelle Chen appeal a trial court order allowing Shanghai Commercial Bank (Bank) to enforce a Hong Kong trial court judgment against their marital community. By statute, the Hong Kong judgment can be enforced to the same extent as a judgment rendered in Washington.[1] Thus, we apply the same conflict of laws principles used by Washington courts to determine the reach of a Washington judgment based on a debt one spouse incurred outside the state. Because Hong Kong has the most significant

---

[1] RCW 6.40A.020(1).

relationship with the underlying transaction, we apply Hong Kong law, which allows the Bank to collect its judgment from Chang and Chen's marital property. Therefore, we affirm.

## FACTS

This is the second appeal arising from the trial court's recognition of a Hong Kong trial court judgment against Chang. This court recounted the facts underlying the Hong Kong action in an unpublished opinion in the first appeal.[2] The only facts relevant here are those bearing on the choice-of-law issue.

Chang signed five documents with Shanghai Commercial Bank in March and April 2008. Those documents together created a credit agreement allowing Chang and his father to borrow money from the Bank. The Bank sent the documents to Chang at his father's Shanghai address. Chang's father mailed them to Chang in Seattle. Chang then signed the documents and returned them to his father in Shanghai.

In Hong Kong Action 806, the Bank obtained a money judgment against Chang for his unpaid debt under the credit agreement.[3]

---

[2] Shanghai Commercial Bank Ltd. v. Chang, noted at 183 Wn. App. 1007, 2014 WL 4198391, at *1-2 (2014), cert. denied, 135 S. Ct. 2847 (2015).

[3] The judgment is a combination of United States dollars, Hong Kong dollars, Japanese yen, interest on those amounts, and costs. Chang states the amount as $9 million.

Chang and Chen have resided in Washington since before they married in 1994. Chen did not sign any of the five documents and was not aware Chang made the credit agreement. She was not a party to the Hong Kong lawsuit.

In June 2012, the Bank filed a petition under Washington's Uniform Foreign-Country Money Judgments Recognition Act[4] (Uniform Act) asking the King County Superior Court to recognize and enforce the Hong Kong judgment.[5] The trial court granted partial summary judgment recognizing the Hong Kong judgment, and this court affirmed.[6]

In August 2015, the trial court granted the Bank summary judgment on the rest of its request. It determined that Hong Kong law applied and thus allowed the Bank to collect its judgment from Chang and Chen's marital property. It later denied Chang's motion for reconsideration. Chang appeals.[7]

## STANDARD OF REVIEW

We review the trial court's summary judgment decision de novo.[8] Summary judgment is proper if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and

---

[4] Ch. 6.40A RCW.

[5] See RCW 6.40A.050.

[6] Shanghai Commercial Bank, 2014 WL 4198391, at *4.

[7] For clarity, we refer to Chang and Chen, in their capacity as appellants, as Chang. We intend no disrespect.

[8] Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

that the moving party is entitled to summary judgment as a matter of law.[9] We must draw all reasonable inferences from the evidence in favor of the nonmoving party.[10] We review the denial of a motion for reconsideration for abuse of discretion.[11] Statutory interpretation is a question of law that we review de novo.[12]

## ANALYSIS

When one spouse, acting alone, incurs a debt, collection presents two distinct questions: What is the character of the debt, separate or community, and what property is available to satisfy it?[13] A debt characterized as separate can nonetheless be enforced against community property in some circumstances.[14]

---

[9] Lakey, 176 Wn.2d at 922.

[10] Lakey, 176 Wn.2d at 922.

[11] Rivers v. Wash. State Conference of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002).

[12] U.S. Tobacco Sales & Mktg. Co. v. Dep't of Revenue, 96 Wn. App. 932, 938, 982 P.2d 652 (1999).

[13] Haley v. Highland, 142 Wn.2d 135, 147, 12 P.3d 119 (2000).

[14] See Pac. Gamble Robinson Co. v. Lapp, 95 Wn.2d 341, 349-50, 622 P.2d 850 (1980) (separate contract debt enforceable against community where law of state with most significant relationship to transaction would allow enforcement against that particular property); deElche v. Jacobsen, 95 Wn.2d 237, 246, 622 P.2d 835 (1980) (separate tort debt enforceable against community where separate property is insufficient); Komm v. Dep't of Soc. & Health Servs., 23 Wn. App. 593, 599, 597 P.2d 1372 (1979) (judgment against mother for child support enforceable against marital community). But see Colorado Nat'l Bank of Denver v. Merlino, 35 Wn. App. 610, 617, 668 P.2d 1304 (1983) (separate debt in real property transaction not enforceable against community).

This appeal turns on whether the Hong Kong judgment against Chang presents one of those circumstances.

Washington has adopted the Uniform Act. The act provides that Washington courts "shall recognize a foreign-country judgment" for money damages that is "final, conclusive, and enforceable" where rendered, unless one or more of the mandatory or discretionary grounds for nonrecognition applies.[15] This court held in the first appeal that the Hong Kong judgment is recognizable and enforceable in Washington.[16]

Under the Uniform Act, Chang may assert any defenses against enforcement of the Hong Kong judgment that he could assert against a Washington judgment. RCW 6.40A.060(2) provides that a recognized "foreign-country judgment is . . . [e]nforceable in the same manner and to the same extent as a judgment rendered in this state." The legislature included RCW 6.40A.060(2) in the 2009 legislation adopting the updated Uniform Act. The drafters of that model legislation explained in their comments that, "once recognized, the foreign-country judgment has the same effect and is subject to the same procedures, defenses and proceedings . . . of a comparable court in

---

[15] RCW 6.40A.020(1), .030.
[16] Shanghai Commercial Bank, 2014 WL 4198391, at *4.

the forum state, and can be enforced or satisfied in the same manner as such a judgment of the forum state."[17]

When a spouse is not a party in a Washington lawsuit, that spouse can choose to wait and intervene at the time of execution to prove that the judgment cannot be collected from the marital community.[18] When this happens, the court looks to the facts supporting the judgment to determine its reach.[19] For this reason, we reject Chang's claim that the facts supporting the Hong Kong judgment merged in the judgment and cannot be considered when deciding if it can be collected from the marital community.

To decide the reach of the Hong Kong judgment, we must examine the underlying facts, as we would for a judgment rendered in Washington. Here, Chang claims that because he did not incur the debt for the benefit of his marital community, the Bank cannot enforce that debt against the community's assets.[20] But Chang skips a step in the correct analysis. When a Washington court bases its judgment on a debt one spouse incurred outside the state, Washington courts

---

[17] UNIF. FOREIGN-COUNTRY MONEY JUDGMENTS RECOGNITION ACT § 7 cmt. 3, 13 pt. 2 U.L.A. 39 (Supp. 2016). This court views official comments on uniform laws as persuasive authority. See Townsend v. Quadrant Corp., 153 Wn. App. 870, 879, 224 P.3d 818 (2009), aff'd on other grounds, 173 Wn.2d 451, 268 P.3d 917 (2012).

[18] Komm, 23 Wn. App. at 599.

[19] Komm, 23 Wn. App. at 599-600; see also Merritt v. Newkirk, 155 Wash. 517, 523-24, 285 P. 442 (1930).

[20] See Oil Heat Co. of Port Angeles, Inc. v. Sweeney, 26 Wn. App. 351, 355, 613 P.2d 169 (1980).

use a conflict of laws analysis to decide what law to apply to decide if the judgment can be collected from that spouse's marital community.[21] As required by RCW 6.40A.060(2), we use the same conflict of laws analysis to decide whether the Hong Kong judgment can be enforced against his and Chen's marital community.

Our conflict of laws analysis asks which jurisdiction "has the most significant relationship to the transaction and the parties under" seven principles:[22]

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,

---

[21] See Pac. Gamble, 95 Wn.2d at 344; Pac. States Cut Stone Co. v. Goble, 70 Wn.2d 907, 908-09, 425 P.2d 631 (1967); Potlatch No. 1 Fed. Credit Union v. Kennedy, 76 Wn.2d 806, 808, 459 P.2d 32 (1969) (all applying conflict of laws analysis to determine whether to enforce a Washington judgment against community property); see also Colorado Nat'l Bank of Denver, 35 Wn. App. at 617 (indicating that if liability incurred in Colorado were for unsecured promissory note instead of real property agreement, it would be presumptively enforceable against the Washington community).

[22] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (AM. LAW INST. 1971), quoted in Mulcahy v. Farmers Ins. Co. of Wash., 152 Wn.2d 92, 100, 95 P.3d 313 (2004); Pac. States, 70 Wn.2d at 909; Potlatch, 76 Wn.2d at 813. This analysis applies both when determining whether the judgment is enforceable, which has already been decided in this case, and in deciding what property is available to satisfy the judgment, as we do here. Writing in dissent in Pacific Gamble, Justice Horowitz drew a distinction between these questions, but our courts' decisions have not. 95 Wn.2d at 351 (Horowitz, J., dissenting).

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.[23]

When applying these principles, Washington courts consider five types of contact: the places of contracting, negotiation, and performance; the location of the subject matter of the contract; and "the domicil, residence, nationality, place of incorporation and place of business of the parties."[24] We evaluate these contacts "according to their relative importance with respect to the particular issue."[25]

Here, weighing these factors "according to their relative importance with respect to the particular issue"[26] of what property is available to pay the Bank's judgment, we find that Hong Kong law has the most significant relationship to the enforcement of the Hong Kong judgment.

We look to the underlying transaction in performing this analysis.[27] The places of contracting, negotiation, and performance and the location of the

---

[23] RESTATEMENT § 6(2). This test applies equally to the laws of a foreign country as to the laws of another state. Untersteiner v. Untersteiner, 32 Wn. App. 859, 862, 650 P.2d 256 (1982).

[24] RESTATEMENT § 188(2), quoted in Mulcahy, 152 Wn.2d at 101.

[25] RESTATEMENT § 188(2), quoted in Mulcahy, 152 Wn.2d at 101.

[26] RESTATEMENT § 188(2), quoted in Mulcahy, 152 Wn.2d at 101.

[27] See Pac. Gamble, 95 Wn.2d at 346 ("'[T]hese contacts are guidelines indicating where the interests of particular states may touch the transaction.'" (quoting Potlatch, 76 Wn.2d at 810)).

subject matter of the contract all favor Hong Kong.[28]  And in light of these contacts, the justified expectations of the parties and the policies of Hong Kong and Washington indicate that Hong Kong has the most significant relationship to the issue here.

The parties' reasonable expectations favor Hong Kong law.  Chang asserts that Washington residents have a reasonable expectation that Washington law will apply to enforcement of contracts they sign.  But Chang knew he was dealing with a Bank in Shanghai and that the documents included Hong Kong choice-of-law provisions.  Conversely, the record contains no indication that the Bank knew it was dealing with Washington residents; the documents Chang signed were all addressed to his father's residence in Shanghai and he returned them to his father, not the Bank, after signing. Chang's father and his advisors used the borrowed money in Hong Kong to pay debt incurred there and having no connection to Washington.

The relative interests and policies of Washington and Hong Kong also favor Hong Kong.  Chang asserts that Washington's policy is to shield community property from collection for a judgment arising from one spouse's debt obligations.  "Washington has a general interest in protection of marital communities from the entirely separate debts of one spouse."[29]  But the Supreme

---

[28] As the Bank concedes, the residence of the parties "is a wash."
[29] Pac. Gamble, 95 Wn.2d at 347.

Court identified limitations of that interest. In <u>Pacific Gamble Robinson Co. v. Lapp</u>,[30] the court noted that the "state has no policy interest in" being "a sanctuary for fleeing debtors." Washington thus lacks a strong public policy of protecting marital communities from the separate debts of one spouse. Although Chang and Chen are not "fleeing debtors," the Supreme Court's observation applies similarly when a debtor spouse lacks separate property and seeks to avoid all liability for a foreign debt by using this state's community property law.[31]

On the other hand, Hong Kong, like Colorado in <u>Pacific Gamble</u>, has interests in "ensur[ing] the predictability of business relations" and preventing debtors from avoiding liability with the protection of foreign laws—at least when their foreign residency is unknown to the other party and the agreement requires the application of Hong Kong law.[32] We note that Washington also has a strong economic interest in preserving foreign trade relations,[33] an area where the enforcement of foreign-made contracts necessarily plays a substantial role.

---

[30] 95 Wn.2d 341, 347, 622 P.2d 850 (1980).

[31] See <u>Pac. Gamble</u>, 95 Wn.2d at 347; <u>see also</u> <u>deElche</u>, 95 Wn.2d at 246 (community liable for separate tort debts where separate property is insufficient).

[32] <u>Pac. Gamble</u>, 95 Wn.2d at 347; <u>see also</u> Potlatch, 76 Wn.2d at 813.

[33] See Jon Talton, <u>State Would Lose If We Turn Against Trade</u>, SEATTLE TIMES, June 11, 2016, <u>http://www.seattletimes.com/business/state-would-lose-if-we-turn-against-trade/</u> [https://perma.cc/K8WQ-454M] ("Washington is the nation's highest exporter per capita and one in three jobs are directly or indirectly tied to trade.").

Weighing the competing policies of Washington and Hong Kong, the justified expectations of Chang, Chen, and the Bank, and the five types of contacts, we conclude that Hong Kong has the most significant relationship to the issue here.

Hong Kong law about the scope of collection presents an issue of "fact" that the trial court decided.[34] The Bank introduced expert testimony that Hong Kong law allows the judgment to be collected from property that, in Washington, would belong to Chang and Chen's community. Chang did not introduce contrary evidence and does not contest that his and Chen's community property would be subject to the judgment if Hong Kong law applies.

Applying Hong Kong law, then, we find that the same property that would be subject to payment of the judgment in Hong Kong, including Chang and Chen's community property, is subject to payment of the debt in Washington to the same extent, even if the property is characterized as "community" under Washington law.[35] Summary judgment for the Bank was therefore appropriate. We affirm.

Because we affirm the trial court judgment by applying Washington conflict of law principles, we do not decide if Chang, through the credit agreement's

---

[34] See Byrne v. Cooper, 11 Wn. App. 549, 553-54, 523 P.2d 1216 (1974).
[35] See Pac. Gamble, 95 Wn.2d at 349-50.

choice-of-law provision, could bind Chen to Hong Kong law without her knowledge.

CONCLUSION

Because Hong Kong law has the most significant relationship to Chang's agreement with the Bank, and Hong Kong law allows collection of the judgment from property that, in Washington, belongs to Chang and Chen's marital community, we affirm.

Leach, J.

WE CONCUR: