

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 12 2017

_Fairhurst, CJ_
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Oct 12, 2017

_Susan L. Carlson_
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| SHANGHAI COMMERCIAL BANK LIMITED, a banking corporation organized and existing under the Laws of Hong Kong Special Administrative Region, the People's Republic of China, <br><br>         Respondent, <br><br> v. <br><br> KUNG DA CHANG and "JANE DOE" CHANG, husband and wife, and the marital community comprised thereof, <br><br>         Petitioners. | No. 93823-7 <br><br><br><br><br> En Banc <br><br><br><br><br> Filed   OCT 12 2017 |

MADSEN, J.—The present iteration of this case concerns whether a Hong Kong judgment is enforceable against marital community property in Washington State. At issue is the efficacy of a choice of law contractual provision in a Hong Kong contract along with application of the "most significant relationship" test for determining conflict of law issues and, ultimately, whether Hong Kong law should be applied to reach the community assets in Washington to satisfy a valid and enforceable foreign judgment. We hold that under the facts of this case, the debtor's community property may be reached to satisfy the Hong Kong judgment.

## FACTS

The facts relevant to the present matter, which concerns Shanghai Commercial Bank's (SCB's) second motion for summary judgment in this case,[1] are undisputed and as follows. Kung Da Chang entered into a credit facility arrangement with SCB between March and April 2008 by executing five agreements. Together, these five agreements enabled Chang and his father, Clark Chang (Clark), to borrow large sums from SCB, and those sums make up the underlying debt obligation at issue in this lawsuit. These five documents define Chang and SCB's agreement and govern their obligations. The parties' agreement explicitly includes a choice of law provision selecting Hong Kong law as the governing law.

The "Facility Letter" that Chang signed provides that the signor is subject to its terms and conditions, which "form an integral part of this Facility Letter." Clerk's Papers (CP) at 148. The "Terms and Conditions for Bank Accounts and General Services" contains a labeled "Governing Law and Jurisdiction" section that provides, "The validity, construction, interpretation, *and enforcement* of the Agreement and/or the Relevant Terms and Conditions shall be governed by the laws of HKSAR [Hong Kong Special Administrative Region]." *Id.* at 172 (emphasis added).[2]

---

[1] SCB's first summary judgment motion established that SCB's Hong Kong judgment against Kung Da Chang is valid and enforceable in Washington. *See Shanghai Commercial Bank Ltd. v. Kung Da Chang*, No. 70526-1-I, at 1 (Wash. Ct. App. Aug. 25, 2014) (unpublished), http://www.courts.wa.gov/opinions/, *review denied*, 182 Wn.2d 1006, 342 P.3d 327 (2015), *cert. denied*, 135 S. Ct. 2847, 192 L. Ed. 2d 877 (2015).

[2] The remaining documents making up the parties' agreement also all expressly choose Hong Kong law.

During exchange of the documentation that forms the parties' agreement, SCB delivered the papers for Chang's signature to an address in Shanghai that was actually Clark's residence. Clark sent the documents to his son in Seattle,[3] Chang signed the documents and returned them to his father in Shanghai, and Clark forwarded them to SCB in Hong Kong. There is no indication in the record that at this time SCB knew that it was dealing with a person residing in Seattle.

Chang ultimately defaulted on the debt obligation, the parties litigated the matter in Hong Kong in high court action no. 806/2009 (HCA 806), and SCB prevailed and secured a $9 million dollar judgment. *Id.* at 290. It is undisputed that the HCA 806 judgment under Hong Kong law encompasses what Washington considers Chang and his wife's marital community, as Hong Kong law exempts solely separate property of a spouse, not community property, from judgments entered against one spouse (Chang).[4]

---

[3] Chang moved to Washington in 1989 and married Michelle Chen in 1994, and the couple has resided in Washington since that time.

[4] The record contains a declaration from a purported expert regarding Hong Kong law, stating:

> Hong Kong is a separate property jurisdiction, and there is no community property concept/principle. The judgment in High Court of Hong Kong HCA 806 of 2009 against KD Chang is enforceable in Hong Kong against all of KD Chang's assets, which I am given to understand include those assets that would be considered "community property" in Washington, but not against his wife's separate assets.

CP at 76-77 (Decl. of Donny Chiu in Supp. of Pet'r's Second Mot. for Summ. J.). As the Court of Appeals correctly noted, "Chang did not introduce contrary evidence and does not contest that his and Chen's community property would be subject to the judgment if Hong Kong law applies." *Shanghai Commercial Bank Ltd. v. Kung Da Chang*, 195 Wn. App. 896, 906, 381 P.3d 212 (2016). Nor does Chang offer a contrary view of Hong Kong law in his briefing to this court.

Following SCB's successful (first) summary judgment motion, which established that HCA 806 is enforceable in Washington,[5] SCB's filed the present (second) summary judgment motion in this continuing enforcement action on July 2, 2015, seeking a ruling that HCA 806 could be enforced against Chang's community property. The trial court granted the second summary judgment motion on August 21, 2015, ruling that the express choice of law provision was determinative, and that even if there were no such provision in this case, the Hong Kong law would apply anyway because it had more significant contacts. The trial court denied Chang's motion for reconsideration on September 15, 2015, and Chang appealed. Court of Appeals, Division One, affirmed, holding that Hong Kong had the most significant relationship to Chang's agreement with SCB and thus under Washington's conflict of law principles, Hong Kong law applied making property that in Washington belongs to Chang and his wife's marital community available for collection of the Hong Kong judgment. *Shanghai Commercial Bank Ltd. v. Kung Da Chang*, 195 Wn. App. 896, 906-07, 381 P.3d 212 (2016). Division One did not reach the effect of the choice of law provision in the agreement between Chang and SCB. *Id.* Chang sought review, which we granted. *See Shanghai Commercial Bank Ltd. v. Kung Da Chang*, 187 Wn.2d 1017, 390 P.3d 337 (2017).

---

[5] *See supra* note 1.

ANALYSIS

Standard of Review

This court reviews the trial court's summary judgment decision de novo. *Mohr v. Grantham*, 172 Wn.2d 844, 859, 262 P.3d 490 (2011). "Summary judgment 'shall be rendered forthwith if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id.* (alterations in original) (quoting CR 56(c)). The court must draw all reasonable inferences from the evidence in favor of the nonmoving party. *Id.* This court reviews the denial of a motion for reconsideration for abuse of discretion. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). Statutory interpretation is a question of law that the court reviews de novo. *Philippides v. Bernard*, 151 Wn.2d 376, 383, 88 P.3d 939 (2004). Choice of law is a question of law that the court reviews de novo. *Erwin v. Cotter Health Ctrs., Inc.*, 161 Wn.2d 676, 691, 167 P.3d 1112 (2007); *Seizer v. Sessions*, 132 Wn.2d 642, 650, 940 P.2d 261 (1997).

Restatement (Second) of Conflict of Laws § 187 (Am. Law Inst. 1971)

Washington courts "shall recognize a foreign-country judgment" for money damages that is "final, conclusive, and enforceable" where rendered, unless one or more of the mandatory or discretionary grounds for nonrecognition applies. RCW 6.40A.030(1), .020(1)(b). As noted, SBC's previous summary judgment motion established that the Hong Kong judgment is valid and enforceable in Washington. *Shanghai Commercial Bank Ltd. v. Chang*, No. 70526-1-I, at 1 (Wash. Ct. App. Aug. 25, 2014) (unpublished), http://www.courts.wa.gov/opinions/, *review denied*, 182 Wn.2d

5

1006, 342 P.3d 327 (2015), *cert denied*, 135 S. Ct 2847, 192 L. Ed. 2d 877 (2015). A recognized "foreign-country judgment is . . . [e]nforceable in the same manner and to the same extent as a judgment rendered in this state." RCW 6.40A.060(2).

The first appeal having resolved that the Hong Kong judgment, HCA 806, is enforceable in Washington, this court is now asked to decide whether the judgment debtor's community property may be reached to satisfy the Hong Kong judgment. In deciding that issue, we must address the efficacy of the parties' express choice of law provision in their governing agreement. Our decision in *Erwin* directs that such inquiry be undertaken and provides the appropriate analysis.

In *Erwin*, we explained that in resolving disputes concerning choice of law the court need decide (1) whether there is an actual conflict of laws and, if so, (2) whether the parties' agreement's choice of law provision is effective. 161 Wn.2d at 692. "'When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis.'" *Id.* (quoting *Seizer*, 132 Wn.2d at 648). "If the result for a particular issue 'is different under the law of the two states, there is a "real" conflict.'" *Id.* (quoting *Seizer*, 132 Wn.2d at 648 (citing *Pac. Gamble Robinson Co. v. Lapp*, 95 Wn.2d 341, 344-45, 622 P.2d 850 (1980), *overruling on other grounds as recognized by Haley v. Highland*, 142 Wn.2d 135, 12 P.3d 119 (2000))). "'[W]here laws or interests of concerned states do not conflict,' the situation presents 'a false conflict' and 'the presumptive local law is applied.'" *Id.* (internal quotation marks omitted) (quoting *Seizer*, 132 Wn.2d at 648-49).

Here, there is an actual conflict between Hong Kong law and Washington law on the issue of whether Chang and his wife's community property is reachable for satisfaction of the HCA 806 judgment. As noted, evidence in the record regarding Hong Kong law states in relevant part that "Hong Kong is a separate property jurisdiction, and there is no community property concept/principle." CP at 76. Accordingly, "[t]he judgment in . . . HCA 806 . . . against KD Chang is enforceable in Hong Kong against all of KD Chang's assets, . . . includ[ing] those assets that would be considered 'community property' in Washington." Id.

Washington law yields a different result. Similar to this case, in *Potlatch No. 1 Federal Credit Union v. Kennedy*, 76 Wn.2d 806, 459 P.2d 32 (1969), the husband (a Washington resident) undertook a loan obligation (as cosigner) with a lender in Idaho, a noncommunity property state. Upon default, the foreign creditor sought relief against the husband, his wife, and their Washington community. The trial court, applying Washington law, ruled that the foreign creditor was not entitled to judgment against the wife or the community. *Id.* at 807-08. In the course of affirming the judgment, this court explained that "[u]nder the law of this state [(Washington)], community property is liable for the suretyship debt of one of the parties only if the community has been benefited by the obligation." *Id.* at 808.[6] "Under Idaho law, however, the community is liable for the separate debts of the husband, irrespective of whether they were incurred

---

[6] Similarly here, the SCB account provided moneys for Clark's investment activities in Hong Kong and for servicing Clark's investment debts at another Hong Kong bank. Chang and Chen's community received no money (benefits) from the SCB account.

7

for the benefit of the community."[7] *Id.* Accordingly, if Idaho law were applied, "[the foreign creditor] plaintiff would have been entitled to judgment against the . . . community." *Id.* But if Washington law were applied, "there would be no recovery against the community." *Id.* In the absence of a choice of law by the parties, this court applied the "most significant relationship" test (discussed below) and, based on the specific facts, applied Washington law and affirmed the trial court. *Id.* at 809-14.

As discussed in *Potlatch*, this is an actual conflict. *See also Erwin*, 161 Wn.2d at 692 (if the result for a particular issue is different under the law of the two states, there is a "real" conflict).

Given an actual conflict, the analysis turns to whether the parties' contractual choice of law is effective. *Id.* at 693. In *Erwin*, this court adopted *Restatement* section 187 as "the law of Washington when resolving conflict of laws issues in which the parties have made an express contractual choice of law to govern their contractual rights and duties." *Id.* at 694. This court explained that "[s]ince 1967, Washington has followed the most significant relationship test . . . [of] the *Restatement* [section 188] when resolving contractual choice-of-law problems in which the parties did *not* make an express choice of law." *Id.* at 693-94 (citing *Mulcahy v. Farmers Ins. Co. of Wash.*, 152 Wn.2d 92, 100, 95 P.3d 313 (2004)); *see also id.* at 696. "Section 187 of the *Restatement* provides the

---

[7] The same is true under Hong Kong law, as attested in the noted expert declaration.

rule for conflict of laws problems in which the parties have made an express contractual

choice of law." *Id.* at 694.[8] *Restatement* section 187 provides as follows:

> "'§ 187. Law of the State Chosen by the Parties
>
> '(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
> '(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
> > '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> > '(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
> '(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.'"

*Id.* at 694-95 (quoting *O'Brien v. Shearson Hayden Stone, Inc.*, 90 Wn.2d 680, 685, 586

P.2d 830 (1978) (quoting *Restatement* § 187)).

Here, subsection (1) applies. The parties could have (and did) expressly provide

in their agreement that "[t]he validity, construction, interpretation *and enforcement*" of

---

[8] Here, the Court of Appeals correctly acknowledged that the parties' "agreement requires the application of Hong Kong law." *Shanghai Commercial Bank*, 195 Wn. App. at 905. Yet the Court of Appeals analysis does not mention *Restatement* section 187, applying instead only the analysis contained in *Restatement* section 188. *See id.* at 903 n.22. Although in this case the Court of Appeals analysis and the analysis applied in this decision achieve the same outcome, we granted review in part to reiterate the analytical framework that should be followed when a choice of law provision is elected by the parties.

their agreement "shall be governed by [Hong Kong law]." CP at 172 (emphasis added). The specific inclusion of *enforcement* in context fulfills the specificity requirement of subsection (1), encompassing the enforcement action here and thereby making the parties' choice of law selection effective under subsection (1).

Further, even if the language of the choice of law provision were deemed to be too general to comply with subsection (1), or the nature of the subsection (1) requirement could not otherwise be met here, subsection (2)(b) would apply to the circumstance presented in this case.[9] Under subsection (2)(b), the law chosen by the parties (i.e., Hong Kong law) will be applied *unless* application of Hong Kong law would be contrary to Washington policy *and* under *Restatement* section 188 (most significant relationship test) Washington would be the state of applicable law absent an express choice of law designation by the parties. As the discussion in the next section (concerning *Pacific Gamble* and *Potlatch*) explains, the application of Hong Kong law in this circumstance does not offend Washington policy. Further, the most significant relationship test (applied below) favors application of Hong Kong law. Accordingly, because subsection (2)(b) conditions foreclosing application of the chosen law are not met, the parties' express choice of Hong Kong law is effective under *Restatement* section 187.

_Restatement_ section 188

Turning to *Restatement* section 188, as we have noted, Washington courts have applied the most significant relationship test to contract choice of law issues for half a

---

[9] Subsection (2)(a) does not apply because "the chosen state" (Hong Kong) clearly *does* have a substantial relationship to the parties and the transaction.

century. *See Mulcahy*, 152 Wn.2d at 100 (citing *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wn.2d 893, 425 P.2d 623 (1967)). "In the absence of an effective choice of law by the parties, the validity and effect of a contract are governed by the law of the state having the most significant relationship with the contract." *Pac. Gamble Robinson Co. v. Lapp*, 95 Wn.2d 341, 343, 622 P.2d 850 (1980). *Restatement* section 188 provides a summary of the test to be applied:

> "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.[10]
> "(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> "(a) the place of contracting,
> "(b) the place of negotiation of the contract,
> "(c) the place of performance,
> "(d) the location of the subject matter of the contract, and
> "(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
> "These contacts are to be evaluated according to their relative importance with respect to the particular issue.
> "(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied."

---

[10] *Restatement* section 6 lists "Choice-of-Law Principles" at subsection (2) as follows:
   (a) the needs of the interstate and international systems,
   (b) the relevant policies of the forum,
   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
   (d) the protection of justified expectations,
   (e) the basic policies underlying the particular field of law,
   (f) certainty, predictability and uniformity of result, and
   (g) ease in the determination and application of the law to be applied.

*Id.* at 346 (quoting *Restatement* section 188). "Additionally, the expectations of the parties to the contract may significantly tip the scales in favor of one jurisdiction's laws being applied over another's." *Mulcahy*, 152 Wn.2d at 101; *see also Pac. Gamble*, 95 Wn.2d at 346; *Potlatch*, 76 Wn.2d at 810.

In *Pacific Gamble*, this court addressed the issue of whether a creditor on an obligation incurred by one spouse in a foreign, noncommunity property state, where both spouses were previously domiciled, was restricted in its recovery to the separate property of the obligor spouse after the couple moved to Washington. 95 Wn.2d at 343. In *Pacific Gamble*, the husband, a Colorado resident and business owner, signed a note to secure a loan for his Colorado business. His wife did not sign the note. Under Colorado law, only the husband's earnings and property were subject to the debt. The husband defaulted, he and his wife moved to Washington, and the creditor sued in Washington, seeking to recover the balance due on the note from both the husband and the marital community. *Id.* at 342-43.

Applying *Restatement* section 188, this court noted that Colorado had numerous governmental interests in the note transaction. The transaction occurred in Colorado, the husband was doing business in Colorado, and he and his wife were domiciled in Colorado at the time of the execution of the note, which was signed in Colorado by the husband individually and on behalf of his Colorado corporation. Both parties apparently contemplated that all performance was to be in Colorado. *Id.* at 346-47. This court assumed that Colorado's interests included ensuring the predictability of business

relations and to prevent the flight of debtors to other states to avoid payment of otherwise legitimate debts. *Id.*

This court acknowledged that while Washington has a general interest in protection of marital communities from the entirely separate debts of one spouse, *see* RCW 26.16.010, .020, nevertheless, "neither this court nor the legislature currently adheres to the rule that the marital property, including the wages of a debtor spouse, are under all circumstances to be insulated from the claims of a creditor on a separate debt." *Pac. Gamble*, 95 Wn.2d at 347 n.2. Moreover, Washington had no connection with the transaction until the husband and wife established their domicile here a few months after the note went into default. *Id.* at 347. The court noted, "[T]his state has no policy interest in maintaining within its borders a sanctuary for fleeing debtors." *Id.*

As to the parties' expectations, the court held that all parties would assume that Colorado law applied. The creditor had willingly subjected itself to Colorado law by doing business in Colorado and contracting with a Colorado resident, and the creditor "could justifiably assume that the Colorado law would likewise apply to [the creditor's] business debtor." *Id.* at 348. The husband and wife could reasonably expect at the time the note was executed that the transaction would be governed by Colorado law since they had long been domiciled in Colorado, and remained there for a time after the note was signed; "they could not justifiably believe that the obligation could be fairly avoided by . . . [moving] to a state where a husband's wages would not be subject to the debt." *Id.* This court held that the numerous contacts, competing policies, and justifiable expectations of the parties show Colorado's interest in the contract to be far more

13

significant than Washington's and accordingly applied Colorado law, thereby subjecting all of the husband's wages and acquisitions available for payment of the debt, "notwithstanding such property is characterized as 'community' under Washington law." *Id.* at 349-50.

The *Pacific Gamble* court noted that its decision was consistent with *Potlatch*, even though in *Potlatch* the court concluded that Washington law should apply to the question of whether the community was liable for the husband's suretyship obligation to an Idaho creditor; the result reached turned on application of the above factors to the facts of the case. *Id.* at 350 n.3. "Had we found [in *Potlatch*] that Idaho had the most significant relationship to the transaction, it is clear we would have applied Idaho law and accordingly imposed liability on the Washington marital community." *Id.* Key to the result in *Potlatch* was the fact that the Idaho creditor *knew* it was dealing with Washington residents and *knew* that the property covered in the chattel mortgage at issue was located in Washington, and that it was likely that the debtors' community property would be situated in Washington. *Potlatch*, 76 Wn.2d at 813.

Applying the *Restatement* section 188 factors, *Pacific Gamble*, and *Potlatch* to the facts of this case yields the result that Hong Kong law has the most significant relationship to the present matter concerning enforcement of the Hong Kong judgment. The places of contracting, negotiation, and performance and the location of the subject matter of the contract favor Hong Kong. Given these contacts, the justified expectations of the parties and the policies of Hong Kong and Washington indicate that Hong Kong has the most significant relationship to the issue here. The parties' reasonable

14

expectations favor Hong Kong law. Less than a week before the Facility Letter and other documents were prepared by SCB for Chang's signature, Chang was in Hong Kong with Clark, meeting with a bank executive and investment adviser about moving millions of dollars of investment accounts to SCB. Chang clearly knew that he was dealing with a bank in Hong Kong and that the agreement with SCB expressly included Hong Kong choice-of-law provisions. Conversely, the record contains no indication that SCB knew it was dealing with a Washington resident; the documents Chang signed were all addressed to his father's (Clark's) residence in Shanghai and Chang returned them to Clark, not to SCB, after signing. Clark and his advisors used the borrowed money in Hong Kong to pay investment debt incurred there that had no connection to Washington.

The relative interests and policies of Washington and Hong Kong also favor Hong Kong. Like Colorado, Hong Kong has an interest in ensuring the predictability of business relations, including the payment of debt obligations. *See Pac. Gamble*, 95 Wn.2d at 346-47. And while Washington has an interest in generally protecting the welfare of community property interests of its residents, it would not serve those interests to permit debtors to hide behind or misuse community property status as a blanket protection of assets from legitimate foreign debt collection in all circumstances.

In sum, weighing the competing policies of Washington and Hong Kong and the justified expectations of Chang, Chen, and SCB, and considering Chang's contacts with Hong Kong, we conclude that Hong Kong has the most significant relationship to the issue here. For all the reasons discussed above, we affirm the trial court's grant of summary judgment.

15

<u>Merger</u>

Finally, relying on *Caine & Weiner v. Barker*, 42 Wn. App. 835, 837, 713 P.2d 1133 (1986), which addresses the "merger doctrine," Chang argues that the present enforcement action should be considered without any reference to the underlying agreement, breach, or contacts as discussed above. He contends that "[t]he underlying claim is irrelevant to an inquiry into enforceability." Pet. for Review at 15. But Chang's reliance on the merger doctrine is misplaced in the present context. In *Caine*, Division One observed that the merger rule "applies generally to a judgment for a plaintiff in an action to recover money." 42 Wn. App. at 837. "As a general rule, when a valid final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it. Thereafter, the plaintiff cannot maintain an action on the original claim or any part thereof." *Id.* (citations omitted). But *Caine* also acknowledged the doctrine's limitations as follows:

> The merger rule is based in part upon the need to prevent vexatious relitigation of matters that have already passed into judgment as between the parties to the litigation and their successors. However, despite the general rule that underlying rights and obligations are extinguished by the judgment, *the doctrine is designed to promote justice and should not be carried further than that end requires.*

*Id.* (emphasis added) (citations omitted). Here, application of the merger doctrine is not warranted or appropriate. The present case does not involve vexatious relitigation; SCB merely seeks enforcement of a valid judgment. Further, application of the doctrine as Chang advocates would require the court to ignore the parties' express expectation

16

(evidenced by the choice of law provision) that Hong Kong law is to be applied comprehensively to all aspects of the agreement, including enforcement. Accordingly, because application of the doctrine as Chang advocates would be contrary to the rule's parameters as noted in *Caine*, we decline to apply the merger doctrine here.

CONCLUSION

The trial court correctly granted SCB's second summary judgment motion because the express choice of law provision contained in the agreement between SCB and Chang is effective under *Restatement* section 187 and *Erwin*. Further, if there were no express choice of law provision in this case, Hong Kong law would apply in any event under *Restatement* section 188's most significant relationship test. Accordingly, Hong Kong law applies in this enforcement action, making all of Chang's assets, including community property in Washington, available for payment of the debt, but Chang's wife's separate assets are not available. We reiterate that the appropriate analytical framework for conflict of law analysis, where there *is* a choice of law by the parties, is application of *Restatement* 187 as directed in *Erwin*. For the reasons discussed above, we affirm the trial court's grant of summary judgment.

No. 93823-7

Madsen, J.

WE CONCUR:

Fairhurst, C.J.

Wiggins, J.

González, J.

Owens, J.

Gordon McCloud, J.

Stephens, J.

Yu, J.